[S. F. No. 8170. In Bank.—June 21, 1917.]

O. L. SHAFTER ESTATE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents; MRS. RUTH HARRINGTON, Applicant.

WORKMEN'S COMPENSATION ACT—ACCIDENTAL KILLING OF GAMEKEEPER— INJURY IN COURSE OF EMPLOYMENT.—The accidental killing of a person employed to patrol a ranch as gamekeeper, while assisting the lessees of the property in hunting a deer under express orders of the lessor, is an accident occurring in the course of the employment within the provisions of the Workmen's Compensation Act.

ID.—KEEPER OF HUNTING PRESERVES — OCCUPATION NOT WITHIN EXCLUDED CLASSES.—A gamekeeper employed to patrol a ranch and to aid in hunting deer is not included within section 14 of the Workmen's Compensation Act, which excludes any employee engaged in farm, dairy, agricultural, viticultural, and horticultural labor, in stock or poultry raising, from the provisions of the act.

ID.—ABSENCE OF WILLFUL MISCONDUCT.—The accidental killing of a gamekeeper while assisting the lessees of his employer in hunting a deer cannot be said to be due to the willful misconduct of the deceased in negligently proceeding to a point some distance in advance of that agreed upon between himself and his associate, except for which the accident would have not happened.

APPLICATION for a Writ of Review to annul an award made by the Industrial Accident Commission.

The facts are stated in the opinion of the court.

Charles W. Slack, Chauncey S. Goodrich, and Virgil M. Airola, for Petitioner.

Christopher M. Bradley, and Warren H. Pillsbury, for Respondents.

VICTOR E. SHAW, J., *pro tem.—Certiorari* to review the proceedings of the Industrial Accident Commission, wherein an award of compensation was made by it to Mrs. Ruth Harrington for the death of her husband while engaged in the employ of petitioner.

The commission in effect found that Sidney M. Harrington, husband of the applicant, was killed by reason of an accident arising out of, and in the course of, his employment by the O. L. Shafter Estate Company; that said employee was not engaged in an occupation falling within the exceptions specified in section 14 of the Workmen's Compensation Act; nor was the accident caused by the willful misconduct of deceased; all of which findings are attacked by petitioner for want of support in the evidence.

The facts material to the inquiry, as disclosed by the return to the writ, are as follows: Petitioner, at whose request the writ was issued, is a corporation and at the time in question was the owner of a large tract of land in Marin County known as the "Lake Ranch," upon which it maintained stock, including a number of dairy cows, which and the right to pasture the same thereon was leased to Palascini brothers, who operated a dairy. There was considerable wild game upon the ranch and the season for hunting deer thereon opened August 1, 1916, and extended to September 15th following. During preceding years petitioner had let hunting privileges upon the ranch, requiring the lessees thereof to furnish a game warden. The leases having expired, petitioner, in July, 1916, acting through W. F. La Grange, its superintendent, employed Sidney Harrington as a game warden and keeper to patrol the ranch on horseback, look after and protect the game from poachers, and apprehend and eject trespassers, to which duties was thereafter added that of assisting the Palascini boys in killing a deer, which employment was to commence August 1st. About July 29th Harrington, finding that he would be unable to accept the employment, so notified La Grange, at whose request he secured one Parsons to take his place, it being agreed, however, that Harrington should work with Parsons from Tuesday, August 1st, to and including the following Sunday, August 6th. About August 2d or 3d, on the occasion of a visit to the ranch by La Grange, there being present the Palascini brothers, Harrington, and Parsons, the former said that the ten-

ants were each entitled to a deer, and upon someone suggesting that the Palascini brothers were poor shots and not very good hunters, La Grange said to Harrington and Parsons: "I want to see them get a deer, and if they don't get it you boys see that they get it." Harrington, accompanied by Parsons, commenced work on August 1st, as he had agreed to do, and up to the time of his death they found a number of trespassers engaged in hunting on the ranch. On Saturday, August 5th, the day on which the accident occurred, Parsons was engaged in preparing a camp wherein to locate his family, and Harrington on the forenoon of said day patrolled the ranch alone. On his return to the house of Palascini brothers, with whom he boarded, and at about 1 o'clock P. M., he requested Antone Palascini to go with him on a ride in patrolling the ranch, and at the same time he referred to what La Grange had said in regard to seeing that Palascini got a deer. On this last trip Harrington, as was his custom, carried a rifle, as also did Palascini, and so far as shown the nature of the work done was the same and consisted of that usually performed in patrolling the ranch, except that in connection therewith he and Antone Palascini both shot at deer which they saw while engaged in such patrol and care of the ranch. After resting a couple of hours, and at about 6 P. M., Harrington said to Antone: "Now we will go around and look and see if we can get a deer." Going up a canyon they found one, at which Harrington fired without hitting it; thereupon he said to Palascini: "You go round one way and I will go round the other way. We will round up the deer and we will make it come back this way. But when you get up the hill, don't go any farther ahead, because if I see the deer I am going to shoot, and you do the same." Palascini saw the deer and shot at it, thinking that Harrington was two or three hundred yards behind, and after firing and not seeing Harrington he went to look for him and discovered that he had shot him through the head, causing instant death.

In our opinion, the attack made upon the findings is without merit. The language concededly used by La Grange admits of no meaning other than that Palascini was authorized to hunt and kill a deer; and it is equally clear that Harrington and Parsons, as game wardens, were in express terms directed to see that he killed it. Under the instructions

given, the duty of Harrington to aid and assist such authorized hunter in securing the deer was no less than the duty imposed upon him of protecting the game from trespassers and unauthorized hunters.   Nor could it have been intended by La Grange, or understood by Harrington, that the latter should, in aiding Palascini, do less than when found drive or turn the animal in the direction of where Palascini was stationed, or kill it himself, in which endeavor he was engaged at the time he was shot.

That the accident occurred in the course of the employment seems clear from the fact that it occurred while Harrington was actually engaged in doing that which he was employed to do, that is, patrolling the ranch in quest of poachers and at the same time, in connection therewith, under express orders of his employer, and in the ordinary and usual manner, assisting an authorized hunter in finding and killing a deer.   That it arose out of the employment appears from the fact that the accident followed as a natural incident of the employment, engagement in which exposed him to the danger of being accidentally shot, a hazard which he as a reasonable man must have contemplated when he undertook to perform the duties so imposed upon him.   The rule is well stated in *McNicol's Case,* 215 Mass. 497, [L. R. A. 1916A, 306, 102 N. E. 697], where it is said: "If the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment."

Section 14 of the act excludes from the beneficiaries thereof "Any employee engaged in farm, dairy, agricultural, viticultural or horticultural labor, in stock or poultry raising." We find no evidence in the record which tends in the slightest degree to show that deceased was engaged in any calling so excepted from the operation of the statute.   It cannot be said that one employed as the keeper of hunting preserves whose duty it is to apprehend trespassers and protect the wild game from poachers, whose acts in hunting, if permitted, would expose domestic animals therein to the danger of being accidentally shot, is engaged in stock-raising or any of the pursuits mentioned in said section 14.

.Neither is there any ground for the complaint made that deceased was guilty of willful misconduct. Conceding negligence on his part due to the fact that he proceeded to a point some distance in advance of that agreed upon betweeen him and Palascini, except for which the accident would not have occurred, there is nothing indicating that he thus intentionally imperiled his life or recklessly sought a position of danger. (*North Pacific Steamship Co.* v. *Industrial Accident Comm.*, 174 Cal. 357, [163 Pac. 910].)

Petitioner also insists that at the time of the accident which caused the death of deceased he was engaged in an employment not only casual but not in the usual course of the business conducted by the employer. As heretofore stated, petitioner had in previous years leased the hunting privileges of the ranch upon terms which required the lessees to provide a game warden, whose duty was to prevent unlawful shooting of game by trespassers and protect the premises and stock thereon from exposure to injury incident to unlawful hunting. It thus appears that for the protection of the game preserves it was the usual course of petitioner, in the conduct of that branch of its business from which it derived a revenue, to employ through the lessees the services of a game warden. The leases having expired, it acted directly in employing Harrington as gamekeeper for a term of six days to perform services, which in the course of its business it had theretofore required. We attach no importance to the fact that in prior years the service was rendered through an agreement with the lessees of the hunting privileges.

As to the compensation awarded the applicant, the commission found that deceased had not worked substantially the whole of the preceding year in said employment, and that the earnings of an employee so working in the same neighborhood was the sum of $60 per month, " working seven days per week," from which, as a conclusion of law, the commission found "that the average annual earnings of said employee at the time of his injury and death was the sum of six hundred and fifty-six dollars and seventy cents; that the average weekly earnings were twelve dollars and fifty-three cents, and that sixty-five per cent thereof equals eight dollars and twenty-one cents," in accordance with which the award was made. Counsel for respondent undertake to justify the conclusion reached by the commission upon the

ground that the employee whose earnings were properly taken as a basis for the earnings of deceased, as provided by section 17(a), subdivision 2, of the act, *worked seven days per week,* for which he received the sum of $60 per month, and therefore instead of multiplying the sum of two dollars found to be the average daily earnings by three hundred, as provided in said section 17 (a), subdivisions (1) and (2), it should, they claim, by reason of such day labor performed exceeding six days per week, be multiplied by 332, which respondent claims constitutes the average of working days in a year for employees working *seven days* per week.   The lengthy and involved reasoning of counsel in support of the contention is not at all satisfactory.   Indeed, upon this record respondent concedes an absence of evidence which, in ascertaining the average annual earnings, justifies the use of any number other than that specified in section 17(a), subdivision 2, as a multiplier of the daily earnings, and upon the evidence presented we find no warrant in the act for the computation in the manner made.

The daily wage multiplied by three hundred as provided by section 17(a), subdivision 2, gives six hundred dollars as the average annual earnings of deceased, which sum divided by 52 (section 17 [a]) gives $11.54 as the weekly earnings, sixty-five per cent of which, being $7.50, constitutes the weekly indemnity payable to the applicant.

It is therefore ordered that the award be modified by the commission in accordance with the views herein expressed and as so modified the proceedings are affirmed.

Shaw, J., Sloss, J., and Henshaw, J., concurred.

Rehearing denied.