JONES et al. v. INDUSTRIAL COMMISSION OF UTAH
et al.

No. 3412. Decided January 30, 1920. (187 Pac. 833.)

MASTER AND SERVANT—EMPLOYÉ ON CO-OPERATIVE THRESHING MACHINE "AGRICULTURAL LABORER" WITHIN WORKMEN'S COMPENSATION ACT. Where a number of farmers purchased a threshing machine for the purpose of threshing their own grain and used it principally for that purpose, such primary purpose is controlling, and so one employed to assist in threshing operations is an agricultural laborer within the Workmen's Compensation Act, even though grain of others than the owners of the machine was thrashed.

GIDEON and WEBER, JJ., dissenting.

Original proceedings by David Jones and others for writ of certiorari to the Industrial Commission, to review the proceedings of the commission in awarding compensation for the death of one Joseph Hyrum Rowley.

FINDINGS, CONCLUSIONS, AND AWARD OF COMMISSION SET ASIDE AND ANNULLED.

*Harvey Cluff*, of Provo, for plaintiffs.

*Dan B. Shields*, Atty. Gen., and *O. C. Dalby, James H. Wolfe*, and *H. Van Dam, Jr.*, Asst. Attys. Gen., for defendants.

THURMAN, J.

Plaintiffs have applied to this court for a writ of certiorari to review the proceedings of the Industrial Commission of Utah in awarding compensation for the death of one Joseph Hyrum Rowley, which occurred August 13, 1918.

The plaintiffs were the owners of a threshing machine, and Rowley was in their employ when the accident occurred which resulted in his death. The defendant commission, among other things, found that the machine was operated primarily for the purpose of threshing the crops of the owners of the machine, but inasmuch as they were preparing to thresh the crop of a son and renter of one of the owners, and did thresh a part of said crop on the day of the accident, and also threshed for the public during the season of 1918, the commission concluded that the plaintiffs were engaged in commercial threshing, that Rowley was not an agricultural laborer, and that therefore compensation should be awarded to his minor dependents, and funeral expenses allowed. These findings and conclusions are challenged by plaintiffs, and they insist that the commission was without jurisdiction to make the award.

The statute expressly excludes from its operation "agricultural laborers and domestic servants. Comp. Laws 1917, section 3111, as amended in Session Laws 1919, page 156.

While many questions are presented by plaintiffs for our consideration, the only question that need be determined is, Was the deceased, Rowley, at the time of his death, employed as an "agricultural laborer" as that term is used in the Workmen's Compensation Act? If he was, the commission was without jurisdiction to make the award; if he was not, the findings and conclusions of the commission are unassailable.

The facts pertinent to a determination of the question are, in substance, as follows: The plaintiffs are all farmers residing in Utah county. Several years ago, having suffered considerable inconvenience and loss in failing to get their grain threshed in due season, they conceived the idea of co-operating together in the purchase of a machine, as found by the commission, primarily for the purpose of threshing their own grain. During the first two or three years, while paying for the machine, they did considerable threshing for the public. After that they did less, and limited their outside threshing generally to crops lying along the route from the farm of one co-owner to another, and on occasions when it would not seriously interfere with the threshing of their own crops. The commission found that they did commercial threshing for the public during the season of 1918, but the undisputed fact is it was not done until after the unfortunate accident to which we have referred. No grain whatever was threshed in 1918 until after the death of Rowley. They were making preparations to thresh on the day of the accident, and the deceased was assisting in the preparations. He was sent with a team and wagon for a tank of water for the engine, and was instructed not to ride on the tank, as it was considered dangerous. He disregarded the instruction, and not only rode on the tank, but attempted to do so by standing thereon, from which position he fell or was thrown, resulting in his death. After his death on the same day plaintiffs proceeded to thresh the grain of one Calvin Meldrum, a son and renter of James

Meldrum, one of the owners of the machine. The grain was grown on the farm of said owner, and he and his son resided together on the farm.

After the accident the owners of the machine, acting upon legal advice, procured insurance under the Industrial Act, and did more or less custom work during the remainder of the season.

The owners of the machine were not formally organized, either as a corporation or voluntary association. Their respective interests were denominated ''shares,'' each share representing a cash contribution of fifty dollars to the purchase of the machine. Together they employed three or four men, who were paid by the owners so much for every hundred bushels threshed. The owners themselves who worked on the machine were paid in the same manner. It is contended by plaintiffs that less than four men were employed by them, but we are of the opinion the commission was justified in finding otherwise.

The number of adjudicated cases respecting questions analogous to the one here presented is exceedingly limited. This should not be a matter of wonder when we consider that workmen's compensation laws are, in most cases, of comparatively recent origin. We have found no case substantially identical in its facts with the present case. The nearest analogy we have been able to find are cases in which threshing machines or other farm machinery have been devoted entirely to custom work for the community, instead of being used principally on the crops of those who own the machine. Even as to those cases there is a marked conflict among the authorities. Some of the cases' hold that when a farm machine, such as a hay bailer, corn-shredder, or threshing machine, is used even for custom work, the business is farm work, and the employés employed thereon are farm laborers. Other cases take the contrary view. We find no case whatever which holds that the work is not farming, and the employés not farm laborers, where the machine is used primarily by the owners for use on their own farms. The cases we have reviewed holding that where machines are used for custom work the employés thereon are not farm laborers are as follows:

Certiorari.   Award Annulled.

*White* v. *Loades,* 178 App. Div. 236, 164 N. Y. Supp. 1023, in which it is held that a man traveling through the country with a threshing machine and stopping at different farms to thresh grain and beans is not engaged in farming, and his employés are not farm laborers, within the meaning of the New York Workmen's Compensation Act (Consol. Laws, chapter 67).

*Vincent* v. *Taylor Bros.,* 180 App. Div. 818, 168 N. Y. Supp. 287, in which the court seems inclined to hold to the same effect, although the case was not decided on account of a defective record.

*In re Boyer,* a case from the Appellate Court of Indiana, 117 N. E. 507, in which the facts are substantially similar to those in the New York case first above cited and the holding the same. In the course of the opinion, however, the court says:

"If farmers generally owned threshing outfits and were in the habit of threshing their own grain, and the claimant had been employed by the farmers to assist in the work of threshing, and had been injured while doing such work, a more serious question would be presented."

*Miller & Lux, Inc.,* v. *Industrial Acc. Com. of Cal. et al.,* 32 Cal. App. 250, 162 Pac. 651. This case can be more easily comprehended by the reader by quoting two paragraphs from the headnotes which clearly indicate both the facts and the law as determined by the courts:

"One employed as carpenter and foreman in charge of the construction of a cottage for employés upon one of the numerous properties of a large corporation, chartered, among other things, to construct buildings necessary to its business and whose business had for years included the construction, improvement, etc., of buildings on its properties, requiring the constant employment of carpenters thereon, was employed in the 'usual course of the trade, business, profession, or occupation of his employer' within the Workmen's Compensation Act.

"Such employé did not come within the express exclusion of section 14 of the Workmen's Compensation Act, as one engaged in 'farm labor,' notwithstanding the building which he was engaged in constructing was upon a ranch property of his employer."

*Shafter Estate Co.* v. *Industrial Acc. Com. of California et al.,* 175 Cal. 522, 166 Pac. 24. For the reasons stated in

the case next preceding, we quote from this case two paragraphs of the syllabus:

"Where plaintiff's decedent was employed to patrol defendant's ranch as gamekeeper, and was also expressly instructed to aid defendant's lessees in killing a deer, and in the course of the hunt he was accidentally shot by one of the lessees, the accident occurred in the course of the employment.

"Workmen's Compensation Act (Acts 1913, page 279, section 14, excluding from the beneficiaries thereof 'any employé engaged in farm, dairy, agricultural, viticultural or horticultural labor, in stock or poultry raising,' does not include a gamekeeper employed to patrol a ranch to eject poachers and to aid in hunting deer."

The California cases can hardly be said to be even remotely in point. It would require an exceedingly strained interpretation of the law to exclude these employés from the operation of the act on the grounds that they were farm laborers.

Defendant also cites the case of *Anderson* v. *Glen,* Indiana Industrial Board No. 32, as the same appears in the notes to 13 N. C. C. A. 84. This case is pertinent to the point that when a person is employed by employers engaged as independent contractors loading hay, shredding fodder and filling silos as a distinct and independent business the employés are not farm laborers.

It must be conceded that Indiana, as far as its Industrial Board and Appellate Court are concerned, is wedded to the doctrine thus announced. The same may be said of the New York Supreme Court. Neither of these states has determined the question in its court of last resort.

The foregoing cases are the only authorities for defendant that have been called to our attention, or that we have been able to find in our independent research, that are in any substantial sense analogous to the case at bar. On the other hand, the California Industrial Accident Commission has frequently passed upon the question, and has consistently adhered to the doctrine that one employed to operate a machine used as a farming implement is engaged in farm labor even in cases where the machine moves from farm to farm engaged in custom work as an independent business.

*Morris* v. *Spears,* 1 Decisions Ind. Acc. Com. of Cal. 317, is a case in which the syllabus, consisting of one paragraph

only, succinctly states both the facts and the law:

"Where an employer owns a hay press which he moves from farm to farm bailing hay on contract for the owners of said farms, and his employé is injured while working on the hay press on a farm of a person for whom hay is being baled on contract, such employé is engaged in farm labor at the time of his injury, and his employer is not liable under the Workmen's Compensation Insurance and Safety Act."

To the same effect are *Vincent* v. *Louis,* 2 Decisions Ind. Acc. Com. of Cal. 168, and *Neimeyer* v. *Volger,* same volume, page 335. These cases are hay-baling cases, in which the business was carried on in substantially the same manner as in the case of *Morris* v. *Spears,* supra, and the conclusion of the commission was the same in each case.

*Sylcord* v. *Horn,* 179 Iowa, 936, 162 N. W. 249 (Supreme Court of Iowa) is a case in which an employé was engaged in the operation of a corn shredder used by the owner as an independent contractor operating the machine for profit. One paragraph of the syllabus correctly reflects the opinion of the court:

"An employé, injured while operating as an engineer and laborer a corn shredder for an employer under contract with a farmer to do such work, was a 'farm laborer' within Workmen's Compensation Act, section 2477m, exempting from the operation of the act an employé who is a farm or other laborer engaged in agricultural work, the fact that the employer was an independent contractor operating a corn shredder for profit being immaterial, since the word 'agricultural' means pertaining to, connected with, or engaged in 'agriculture,' which is the science of cultivating the ground, especially in fields or large quantities, including the preparation of the soil, the planting of seeds, the raising and harvesting of crops, and the rearing, feeding, and management of live stock; tillage, husbandry, and farming."

*State ex rel. Bykle* v. *District Court,* 140 Minn. 398, 168 N. W. 130, L. R. A. 1918F, 198 (Supreme Court of Minnesota), is a case exactly in point, except that it goes further than is necessary in support of plaintiffs' contention in the present case. An employé was employed on a threshing machine which the owner and employer moved from place to place, threshing grain for the farmers. The employé, while operating the machine, was injured. He asked for compensa-

tion, and the court denied him relief. The opinion of the Supreme Court is brief, but strong and to the point. We are constrained to quote it at some length, as it reflects our own views in better form than we are able to do. After citing one or two of the cases to which we have referred, the court, 140 Minn. 398, 399, 168 N. W. at pages 130, 131 (L. R. A. 1918F, 198) says:

"We think the better rule is to hold that plaintiff is a 'farm laborer.' The fact that plaintiff was not in the employ of the owner of the farm is not controlling. The important question is: What is the nature of the work? The work is done upon a farm. It is done upon farm crops. The purpose of growing the crops is to provide food for consumption or market. Threshing is as necessary in order that the farmer may consume or market the crop as is sowing or harvest. Surely, the man who, years ago, threshed grain with a flail was doing farm labor as much as the man who cradled the grain. So is the man who now threshes beans with a flail. The fact that more complicated mechanical devices are used in this case does not change the character of the work. Much farm work is done by the use of complicated machinery. There are tractor plows, self-binders, and even combination harvester-threshers by means of which harvesting and threshing are done as one operation. These and other operations may be done for others by one who is able to own the more complicated and expensive machinery. But it is all, nevertheless, farm work, and the employé who does such work is a 'farm laborer' within the meaning of the Compensation Act. Any other rule would be impractical, and would lead to discriminations that could not be tolerated. This case illustrates this. Suppose the farmer's hired man who was helping plaintiff had also fallen. Both were doing the same work. Surely the hired man was then a 'farm laborer.' It cannot be said that one was a 'farm laborer' and the other was not."

In the instant case we need not go to the full extent to which the Supreme Court of Minnesota and Iowa and the Industrial Accident Commission of California have gone, for, as manifestly appears, the employers in all of those cases were engaged in custom work for the farmers of the community, or, as our own Industrial Board calls it, "commercial business." There is no pretense that owners of the machine in the cases referred to purchased the same primarily for their own use as farmers, or that they were owners of farms upon which the machines could be used. Notwithstanding this the courts and

commissions referred to held that they were engaged in farming business and their employés, farm laborers.

The illustration made by the Minnesota court in the closing sentence of the excerpt above quoted exactly fits the present case. James Meldrum was one of the owners of the machine in question. He also owned a farm. His son Calvin resided with him on the farm and as a renter was interested in the grain to be threshed. Their grain was in separate stacks on the farm. The position of defendants in respect to the business, in the last analysis, logically leads to the conclusion that while threshing the stack belonging to the son the employés were not "agricultural laborers" within the meaning of the act, and therefore were entitled to compensation at the expense of their employer, but that when they turned to the stack belonging to the father and commenced to thresh they immediately became "agricultural laborers," and were not entitled to compensation. Such an interpretation of the meaning of our Industrial Act, in the opinion of the court, is inadmissible and would result in manifest discrimination and lead to inevitable confusion.

It is not necessary in the present case, nor is it our intention, to go to the extent that some of the cases have gone. We deem it more prudent to deal with such cases when they are presented for our consideration. We hold, however, that in the case at bar, the commission itself having found that the owners of the machine purchased the same primarily for the purpose of threshing their own grain and used it principally for that purpose, such primary purpose becomes controlling in determining the nature and character of their business within the meaning of the Industrial Act.

For the reasons stated the findings, conclusions, and award made by the defendant commission are set aside and annulled. No costs are allowed in this proceeding, for the reason that no printed briefs were filed or costs of a similar nature incurred.

CORFMAN, C. J., concurs.

FRICK, J.

I unhesitatingly concur in the conclusions reached by my Associate, Mr. Justice THURMAN. The statute excepts all "agricultural laborers." The exception includes all persons engaged in the pursuit of agriculture. If, therefore, one who is engaged in threshing grain which is produced upon our farms is engaged in agricultural work, he is not within the provisions of our Industrial Act. It is conceded by the Industrial Commission, and by all concerned in this proceeding, that in case a farmer threshed his own grain with his own threshing machine he and all others who are assisting him are engaged in agriculture, and are thus excepted from the act. The commission, however, held that where grain is threshed by farmers or others for toll or hire the owner of the machine and those he employs to help him are not engaged in agriculture. In other words, if A. pitches bundles to a threshing machine which is owned and operated by a farmer in threshing his own grain, then A. is engaged in agriculture, and does not come within the provisions of the act; but if he pitches bundles to the same machine when it is used for threshing grain for toll or hire for farmers who pay toll, then he is not engaged in agriculture, and comes within the provisions of the act respecting compensation. According to this view, it is not the nature of the work which determines one's calling, but that is determined by the fact that the work is done by a particular person and is compensated for in a particular manner. If, therefore, a farmer purchases a tractor and gang plows, and plows his own fields therewith, he is engaged in agriculture, but if he uses the tractor and plows in plowing his neighbor's fields for a stipulated price per acre he is not engaged in agriculture. To so hold is to make a distinction where there is no difference, and attempt to classify a calling, the classification of which is purely arbitrary and without a proper reason or foundation. In my judgment the threshing machine, if used for threshing grain, and the plows, if used to plow the farmers' fields, howsoever or by whomsoever used, are merely agricultural implements used in the pursuit of agriculture or farming. Moreover, if a classification of agricultural laborers is legally permissible without

discrimination, it must be made by the Legislature, since classification is a legislative and not a judicial function.   As I view it, threshing grain produced on our farms or ranches, in the nature of things, belongs to agriculture just as much as plowing these farms or ranches does, and it is utterly immaterial by what method or by whom the threshing or plowing is done.

This case, in principle, is entirely different from the case of *Chandler* v. *Industrial Commission*, 184 Pac. 1020, recently decided by this court.   In that case it was sought to except an employer and an employé from the provisions of the act each of whom belonged to a class which was clearly intended to be and was within its provisions.   It was therefore not only proper, but was necessary, to apply the provisions of the act liberally so as not to exclude any member of a class which, manifestly, was intended to come within the provisions of the act.   Here, however, the reverse is sought.   What is attempted here is to bring an employé within the act who belongs to a class which is expressly excepted therefrom.   Again, the attempt here is to segregate agricultural laborers into classes, which may not be accomplished by judicial construction, but if permissible at all without discrimination must be brought about by legislative action.   But it is urged that even those engaged in pitching bundles to a threshing machine may, under certain circumstances, be classified.   The contention is based upon the ground that it is possible to classify those who are engaged in domestic work such as house and window cleaning when done under special contract.   While the question of who are and who are not "domestic servants" within the purview of the act is not before us, and hence may not be decided, yet it is quite clear that if one were engaged in house and window cleaning under a special contract he would necessarily be an independent contractor, and hence would not come within the provisions of the act.   The Legislature, in making its classification, has, however, used the comprehensive term of "agricultural laborers" in referring to the class now under consideration, while in referring to the class engaged in domestic service it has used the restrictive term of

"domestic servants." All are aware that one may be engaged in house and window cleaning without being a domestic servant, while we also know that one cannot be engaged in any kind of farm work without becoming an "agricultural laborer." That term would apply even to an independent contractor engaged in farm work.

It is, however, further said that the deceased was not engaged in pitching bundles, and hence it seems to be assumed he is covered by the act. If that were so, then instead of dividing those engaged in threshing grain into two classes, as was done by the commission, they would have to be divided into three classes. In making that contention, therefore, the difficulty is increased rather than solved. The fact, however, still remains that if agricultural laborers may be classified it should be done by the Legislature and not by the courts.

GIDEON, J. (dissenting).

It appears without contradiction that on the date of the accident the deceased and other workmen were engaged in taking the machine in question from the shed where it had remained during the winter months and were making the necessary repairs thereon for the season's work. The deceased had been employed to accompany the machine as a pitcher. On the day in question he was assisting in the repair work, as above indicated.

Among other things, the commission found:

"The pitchers were men employed to throw grain into the machine. They traveled with the machine, were paid by the machine company, and were under the supervision of the foreman, all receiving pay on a percentage basis of the amount threshed. In case the toll taker failed to collect all tolls due, the machine crew were, nevertheless, paid for actual work performed, while the co-owners suffered the loss. It appears that in no case during the season of 1918 did the farmer furnish pitchers; also pitchers were expected to assist in moving and setting up the machine."

The provisions of the Workmen's Compensation act in force at the time of the accident, so far as material to the question under discussion, are:

"The term 'employé,' 'workman,' and 'operative,' as used in this title, shall be construed to mean:

"1.   *   *   *

"2.   Every person except agricultural laborers and domestic servants in the service of any person, firm, or corporation, employing four or more workmen or operatives regularly in the same business."

Comp. Laws 1917, section 3111.   .

Under the findings of the commission, and as abundantly supported by the testimony, the deceased was employed by the threshing machine company, and was in no way under the direction or orders of the owner of the farm.   He was not employed to do any of the usual labor required of a farm hand.   His sole duty seems to have been to assist the owners of the threshing machine in operating such machine.   The term "agricultural laborers," considered in its most comprehensive sense, might consistently be construed to embrace one engaged as was the deceased.   The object of the general act and the phraseology of the section under consideration, however, do not warrant such interpretation.   The language excluding such laborers from the general class mentioned in the act is contained in an exception.   Without such exception, undoubtedly, all agricultural laborers would be entitled to the benefits of the act.   "We are led to the general rule of law which has always prevailed, and become consecrated almost as a maxim in the interpretation of statutes, that where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms.   In short, a proviso carves special exceptions only out of the enacting clause; and those who set up any exception must establish it as being within the words as well as within the reason thereof."   *U. S.* v. *Dickson,* 15 Pet. 165, 10 L. Ed. 689.   The office of a proviso and of an exception to a general statute is similar and subject to the same rules of construction respecting the meaning of such proviso or exception.   Black, Interpretation of Laws (2d Ed.) chapter XL.   It is provided by Comp. Laws Utah 1917, section 5839:

"The revised statutes establish the law of this state * * * and their provisions * * * are to be liberally construed with a view to effect the *objects* of the statutes and to promote justice." (Italics mine.)

Admittedly, the object sought by the Industrial Commission Act is to insure to employés engaged in the industries of this state compensation for accidents, and also compensation to the dependents of such employés where death is caused by such accidents. The state, as well as dependents, is vitally interested in having such compensation paid. *Reteuna* v. *Ind. Com.*, 185 Pac. 535. I am of the opinion that by the exception the intent of the Legislature was to exclude only such laborers as are connected with the everyday or ordinary operation of the farm; that is, any one employed to perform the usual work required on a farm owned or operated by some one in the actual business of farming. The purposes sought by the act, and the phraseology employed in expressing the intent of the Legislature, warrant such construction.

It is suggested in the concurring opinion of Mr. Justice FRICK that any one pitching bundles to a threshing machine, whether employed by the farmer or by the owner of a machine doing commercial threshing, is nevertheless in the same work, and must be included within the exception. That does not, in my judgment, necessarily follow, nor is it controlling. To illustrate: Take the facts in one of the cases relied upon by counsel for plaintiff—*Rheam* v. *Wharton,* 2 Pa. Work, Com. Board, 326. In that case the deceased was employed by the defendant who was engaged exclusively in farming. At the time of the accident the deceased was driving a team and wagon loaded with lumber to be used in constructing a new corncrib on one of the farms owned by the defendant. The claim was disallowed. The commission held that the deceased was engaged as a farm laborer. I doubt if any one would contend that if the deceased had been engaged by an independent contractor who had agreed to construct a corncrib on one of defendant's farms, he would have been considered a farm laborer. Nevertheless, he would have been engaged in the identical work he was doing at the time of the accident. I apprehend that, it could not be successfully maintained be-

Certiorari.   Award Annulled.

fore any court that any one employed by another engaged in going from house to house operating a vacuum cleaner, or washing windows, where the contractor was under contract to clean carpets and wash windows of a family residence, and such employé was injured while engaged in such work, such injured employé would fall within the exception as a domestic servant.   Cleaning carpets and washing windows is work essential to and intimately connected with, and part of the necessary work in maintaining a home, and is work that may be, and usually is, performed by either the housewife or domestic servant.   No reason is given—not even suggested—whereby it is concluded that the Legislature in the exception under consideration used the term "agricultural laborers" in a comprehensive sense and "domestic servants" in a limited or restricted sense.   Both are included in the exception to the general class mentioned in the statute.

The nature of the general employment, in my judgment, largely, if not wholly, determines the class to which the employé belongs.   In the present case the deceased, at the moment of the accident, was not pitching bundles into the machine—on the contrary, he was driving a team hauling a tank partly filled with water.   The work of hauling water may or may not be agricultural work.   It is governed and depends upon the general employment.   Any one employed to do general farm work may well be held to be engaged in agricultural labor while hauling water for stock or other farm purposes.   On the other hand, one employed to haul water for the purpose of running an engine to operate a drill boring for oil on the same farm would not be an agricultural laborer.   The work is identical, and the same means are employed in both cases.

The majority opinion, as I understand it, distinguishes the plaintiffs in this case from parties engaged strictly in commercial threshing.   In my judgment the facts do not warrant such distinction.   The outfit was not owned in equal shares by the plaintiffs.   One of the parties owned at least twelve shares, another six, and still others only one.   Each owner paid the same per bushel for threshing his grain as a nonowner did.

At the end of the season any profit was prorated to the several owners as represented by the number of shares held in the enterprise; that is, each man received his part of the profit accruing to the company according to the investment made. Apparently, a strictly commercial enterprise. The fact that this machine happened to be owned by a number of farmers is, in my judgment, wholly immaterial. If a number of farmers jointly and equally owned a machine for threshing their own grain, and each furnished the necessary help to thresh his grain, a different question would be presented. This record presents no such question.

The following cases are cited in support of the views indicated: *White* v. *Loades,* 178 App. Div. 236, 164 N. Y. Supp. 1023; *Vincent* v. *Taylor Bros.,* 180 App. Div. 818, 168 N. Y. Supp. 287; *O. L. Shafter Estate Co.* v. *Industrial Acc. Com.,* 175 Cal. 522, 166 Pac. 24; *Miller & Lux, Inc.,* v. *Industrial Acc. Com.,* 32 Cal. App. 250, 162 Pac. 651; *In re Boyer* (Ind. App.) 117 N. E. 507.

The rulings of the California commission are cited in the majority opinion. They hold, broadly, that threshing grain by farmers, whether for themselves or others, is agricultural labor, an extreme to which few commissions and fewer courts have gone. On the other hand, the Iowa commission has held that parties grinding sugar cane for farmers are not agricultural laborers. If, however, decisions by compensation or industrial insurance commissioners are to be regarded as persuasive there is no reason for rejecting the decision of the Utah commission in the present case. The Industrial Commission of Utah has made a study of conditions in this state; it has made a survey of the industrial situation here. The Industrial Commission law is of recent enactment. The present commission constitute the first appointees to such body. They were residents of the state at the time of the enactment of the law; they were familiar with the propaganda in favor of its enactment; they were familiar with its legislative history, and were conversant with the public discussions and debates that preceded its enactment. In determining a question like the one in this case, concededly close, and one that

may be termed "a border line case," the opinion of our commissioners is entitled to serious, if not binding, consideration.

I am authorized to say that Mr. Justice WEBER concurs in this dissent.