ALFRED R. KEEFOVER, APPELLANT, V. JAMES VASEY ET AL., APPELLEES.

FILED JULY 7, 1924. No. 23982.

1. **Master and Servant:** EMPLOYER'S LIABILITY ACT: EMPLOYERS OF FARM LABORERS. Where a group of farmers combined in the purchase of a threshing machine for the purpose primarily of threshing their own grain, they and their employees while so engaged are not within the operation of the employers' liability law, which excludes "employers of farm laborers."

2. ——: ——: ——. Neither the fact that, prior to the accident to plaintiff, they had for compensation threshed grain of other farmers after their own threshing was finished, nor the fact that at the time of the accident they were engaged in threshing the wheat of a former part owner of the machine in compliance with a contract under which his share had been transferred for value to defendants, had the effect to convert defendants from their status as employers of farm laborers to that of conducting an independent commercial business.

3. ——: ——: FARM LABORERS. Employees threshing grain on a farm by means of a machine are engaged in farm labor equally with those so employed with a flail.

4. ——: ——: ——. "Employers of farm laborers" as a class are expressly excluded from the employers' liability law, and once the character of the labor is determined, no inquiry as to the occupation or commercial status of the employer is pertinent.

APPEAL from the district court for Gage county: LEONARD W. COLBY, JUDGE. *Affirmed.*

*McCandless & McGuire* and *Hazlett, Jack & Laughlin,* for appellant.

*Sackett & Brewster, Sabin & Vasey* and *Rinaker, Kidd & Delehant, contra.*

Keefover v. Vasey.

*Lester L. Dunn* and *Dale P. Stough, amici curiæ.*

Heard before MORRISSEY, C. J., DAY, GOOD, and THOMPSON, JJ., and REDICK, District Judge.

REDICK, District Judge.

This is a proceeding under the employers' liability law to recover for the loss of an arm by the plaintiff while working in connection with a threshing machine. Compensation was allowed by the commissioner, but on appeal to the district court the award was set aside, and plaintiff has appealed to this court.

At the outset we deem it appropriate to remark that the court has been greatly aided by the exhaustive briefs and logical oral argument of counsel for both parties. All the decided cases bearing upon the questions involved have been cited, and have been discussed and distinguished with great learning by counsel on both sides.

The facts out of which the controversy arises, with one unimportant exception, are without dispute. The defendants are all farmers carrying on their pursuits near the town of Liberty in Gage county, Nebraska. They are owners or operators of neighboring farms. Prior to 1920 the farmers in that vicinity had suffered considerable delay, and consequent loss of market, in having their small grain threshed by traveling threshers, and concluded it would be to their advantage to club together and purchase a thresher for the purpose of threshing their own grain, and in that year defendants Clopper and Vasey, with three other farmers, Bradley, Goin, and Norris, purchased the thresher in question, each owning a one-fifth interest, the arrangement being that each owner should pay into the "company" proportionately for the threshing work done for him. The thresher purchased was the smallest size but one, but large enough to take care of some outside work. Prior to 1923 the machine was operated, threshing first for the owners and then for hire for others in the vicinity. Some changes occurred in the personnel of the owners, and in February, 1923, they were defendants Vasey, Clopper, Douglas (2),

Rounds, and Stahl. In that month Goin sold his interest to the defendants Douglas, which resulted in leaving a gap of several miles between the farm of Bradley and the other owners, and thereupon, February 19, 1923, an agreement was entered into whereby the defendants purchased the interest of Bradley in the machine for the sum of $150 cash and the assumption of Bradley's proportion of the purchase money note given for the machine, and on the condition insisted upon by Bradley that the defendants would thresh Bradley's grain during the season of 1923 as the first work, free of charge, subject, however, to the further condition that if the cost of such threshing was more or less than $100, the difference should be adjusted.

The plaintiff is a farmer, and for several years prior to the accident farmed an eighty-acre tract in the vicinity of the village of Liberty, spending about one-half of his time tending his own crop, the other half in working for his neighbors at odd jobs. During the first ten days of July, 1923, he was engaged in working around for several of his neighbors, to wit: Defendant Vasey, one Emerson, and one McGuire, at a daily wage of $5. About July 16 he was employed by defendant Vasey to work with the thresher. His duties were first, to fix up the threshing machine and put it in running condition, and then to "tend the separator." His wages were not fixed until after the accident, when $5 a day was agreed upon. The thresher having been started up and tried out, on the morning of July 21 the work of threshing was commenced at Bradley's farm, where some grain was threshed before dinner. After dinner, about 2 o'clock, something went wrong, the machine was stopped, and plaintiff, having made some repairs and signaled the engineer to go ahead, was attempting to fill an oil cup on the cylinder shaft, when the feeder belt suddenly broke, caught plaintiff's right arm, and almost instantly jerked it off at the elbow, necessitating amputation between the elbow and the shoulder.

The question for determination is whether or not plaintiff's injuries are compensable under the employers' lia-

bility law of this state, and, specifically, whether or not plaintiff and defendants are excluded from the benefits of said law by the following provision thereof, being subdivision 2, sec. 3029, Comp. St. 1922, reading as follows:

"(2)   The following are declared not to be hazardous occupations and not within the provisions of this act; Employers of household domestic servants and employers of farm laborers."

Our problem requires us to discover the intention of the legislature in the use of the four words "employers of farm laborers."   Our attention has not been called to any statute making use of these precise terms.   In Iowa the excluding words are, "farm or other laborer engaged in agricultural pursuits;" Minnesota, "farm laborers;" Utah, "agricultural laborers;" Idaho, "agricultural pursuits;" Michigan, "farm laborers;" Indiana, "farm or agricultural laborers," and "employers of such persons;" and New York, "farm laborers." It is worthy of note that in these other states the emphasis seems to be placed upon the exclusion of the laborer, while in this state it rests upon the exclusion of the employer of such labor.   It would seem, therefore, that the legislature (composed to a large extent of farmers) by these words have pointed out a class which it intended to exclude from the law, which class consists exclusively, or nearly so, of farmers; and while the classification, as remarked by Schneider, Workmen's Compensation Law, sec. 31, quoted by plaintiff's counsel, "was perhaps based more on legislative expedience than on sound reason," still it is the law, and if there is any question as to the propriety of the classification, that question is not now before us.

It is the contention of plaintiff that defendants in the operation of the threshing machine were not farmers engaged in farm labor, but were engaged in a commercial business and were commercial threshers, as those terms are used in the cases cited, and, further that the plaintiff, at the time of the accident, was not engaged in farm labor. The contention is based upon the fact that in prior years defendants had threshed for others, and, though this is in

dispute, that it was the intention to thresh for others in 1923 after defendants' grain had been cared for, and specially the further fact that, at the time of the accident, defendants were engaged in threshing wheat for Bradley who had sold his interest in the machine, wherefore, it is claimed the cooperative feature was absent.

Quite a number of cases discuss the questions as to what is "farm labor" and who are "farm laborers," but comparativly few deal with the operations of threshing machines and analogous operations, as of corn shellers, corn shredders, and machines for chopping feed. In the cases last referred to, for the purpose of solving these questions, a classification has been recognized, based upon the method in which the operation is carried out. In the first class are placed those cases in which the machine is independently owned by an individual or company not engaged in farming, and who, with a crew, travels about the country from farm to farm threshing grain for an agreed compensation. The members of this class are termed commercial threshers, as the business is carried on independently of farming as generally understood. In the second class are placed those farmers who own their own machines and operate solely upon their own products, and associations of farmers who own the machine together on the cooperative plan, treating their own products. The first class are supposed to be within, the second class without, the operation of the compensation acts.

Regarding the first class, the decisions are in conflict as to whether the parties, employer and employees, are within the protection of the acts. Upon the general proposition four states seem to take the affirmative, as announced in *White v. Loades,* 178 App. Div. (N. Y.) 236, in which case, however, liability was declared under a special provision covering the "operation of a vehicle," the decision of the present question being dictum. *Vincent v. Taylor Bros.,* 180 App. Div. (N. Y.) 818, based upon the dictum in the *White* case, but the proceeding was prosecuted by the plaintiff upon the theory that the defendants were in the milling

business, and the court said: "There is nothing whatever in the evidence indicating that the employers were in fact millers or that they had any interest whatever in the grain or in threshing it beyond merely separating it from the straw at a certain price per bushel. If such were the conceded fact the award should be reversed and the claim dismissed." It would appear that this case should be placed in the negative column. *Industrial Commission v. Shadowen*, 68 Colo. 69, holding that one who goes from farm to farm operating a thresher is not a farm laborer within the exception; *In re Boyer*, 65 Ind. App. 408, holding with the *Shadowen* case and distinguishing the situation from one where the farmer owned his own machine and threshed his own grain; *Roush v. Heffelbower*, 225 Mich. 664, where the employer conducted a corn-husking outfit as a commercial business; this case also distinguishes cases where farmers individually or cooperatively husk their own corn.

Cases taking the negative side of the proposition are: *Sylcord v. Horn*, 179 Ia. 936, holding that the employee of defendant operating a cornshredder for profit was a "farm laborer;" *State, ex rel. Bykle, v. District Court*, 140 Minn. 398, holding to the same effect as to a steam thresher; *Jones v. Industrial Commission*, 55 Utah, 489, which will be referred to later; and *Cook v. Massey*, 38 Idaho, 264, holding that the defendant operating a commercial thresher was engaged in an "agricultural pursuit," the excluding words of the compensation statute. We have examined the remaining cases cited in the briefs, but a discussion of them would unnecessarily extend this opinion.

There is some discussion in the briefs, and in some of the cases cited, upon a supposed distinction between one engaged in agricultural pursuits and one engaged in farm labor. Such a distinction doubtless exists in the sense that one who is engaged in the pursuit of agriculture may not necessarily be a farm laborer, but it is quite evident that every farm laborer is engaged in an agricultural pursuit, so that we do not consider this discussion pertinent to our present inquiry. All of the cases above referred to con-

cede that the threshing of grain is an operation in farm-
ing, and that an employee engaged in that operation, wheth-
er with a flail or a threshing machine, may be a farm la-
borer; but, in the cases cited above as in the affirmative,
the status of the employee is conceived to be changed by
the fact that the employer is not a farmer nor engaged in
the general operation of a farm, but only in a single and
particular part thereof. We are unable to perceive any
logical basis for such a metamorphosis, especially when
considering those statutes in which the excluding words
are made specially applicable to farm laborers. Of course,
the exclusion of the employee from the benefit of the stat-
ute automatically excludes the employer, for it cannot be
contended that it was the intention of the legislature to
exclude farm laborers who worked upon their own farm,
for in such case there would be no employer or employee.
As was suggested in the *Sylcord* case, if a farmer employs
a third party to plow his 40-acre field, the employee of such
third party doing the actual work is a farm laborer within
the precise words of the statute and not entitled to its bene-
fits, regardless of the question whether his employer was
engaged in an agricultural pursuit, for, as already stated,
the exclusion has express reference to farm laborers. But
when we come to apply the excluding words of the Nebras-
ka statute to the situation just adverted to, there would
seem to be no room for doubt. In the statutes to which
we have referred in other states, with the exception of In-
diana, as already remarked, the excluding words are ap-
plied to the farm laborer; while in this state they are ap-
plied to the employer of farm laborers. The distinction
may not be vital, but it appears to us that it closes the door
to all other inquiry as to the character of the business of
the employer, the only one permissible being whether or
not he is an employer of farm laborers.

But the present case presents features differing from
those in all but one of the cases referred to, in the fact that
the threshing machine in question was owned by a group of
farmers who purchased same primarily for the purpose of

threshing their own grain, although, after that had been accomplished, it was used to thresh for other farmers in the neighborhood for a compensation. If this last fact constituted them commercial threshers as defined in some of the cases herein referred to as in the affirmative column, as we have already shown, it would not bring them within the operation of the compensation act, nor remove them from the class of employers of farm laborers excluded by the Nebraska act. It follows that the fact that at the time of the accident the machine was employed in threshing the grain of Bradley (a matter much discussed in the briefs) is immaterial. While it is suggested in a number of cases that an employee of a farmer threshing his own grain, or a group of farmers so engaged on the cooperative plan, would not be within the protection of the compensation act, but one case has been called to our attention presenting this particular feature. *Jones v. Industrial Commission*, 55 Utah, 489, presented a case on facts substantially like those of the case at bar. There a number of farmers joined in the purchase of a threshing machine primarily for the purpose of threshing their own grain. During the first two or three years, while paying for the machine, they did considerable threshing for the public. After that they did less and limited their outside threshing generally to crops lying along the route from the farm of one coowner to another on occasions when it would not seriously interfere with the threshing of their own crops. No threshing was done in 1918 until after the accident to plaintiff, but they were preparing to thresh the grain of a son of one of the owners of the machine, and after the accident, on the same day, proceeded with that work. The Utah statute excluded "agricultural laborers" from the operation of the statute. After a painstaking review of the cases on both sides of the question, the court adopted the rule as laid down in the *Sylcord* and *Bykle* cases as based upon the better reasoning, although at the same time distinguishing them on account of the cooperative feature in the case decided. Referring to the decision of the *Jones* case, from which the appeal had

been taken, to the effect that the threshing of grain for a party who was not connected with the ownership of the machine converted the transaction into a commercial business, the court said:

"James Meldrum was one of the owners of the machine in question. He also owned a farm. His son Calvin resided with him on the farm and as a renter was interested in the grain to be threshed. Their grain was in separate stacks on the farm. The position of defendants in respect to the business, in the last analysis, logically leads to the conclusion that while threshing the stack belonging to the son, the employees were not 'agricultural laborers' within the meaning of the act and therefore were entitled to compensation at the expense of their employer, but that when they turned to the stack belonging to the father and commenced to thresh they immediately became 'agricultural laborers' and were not entitled to compensation. Such an interpretation of the meaning of our industrial act, in the opinion of the court, is inadmissible and would result in manifest discrimination and lead to inevitable confusion."

We think this language applicable to the instant case. To hold that derendants were not employers of farm laborers while threshing the grain of Bradley, but would be such when threshing the grain of Vasey, or some other part owner of the machine, would tax our powers of distinction to the point of confusion. We conclude that the judgment of the district court is correct, and it is

AFFIRMED.

Note—See Workmen's Compensations Acts, p. 41, sec. 35; p. 45, sec. 36.