## Lautsbaugh v. Seavers

*Guy H. Davies* and *Ray T. Harrigan*, for plaintiff.
*John D. Faller*, for defendant.

REESE, P. J., July 11, 1935.—This is an appeal from the Workmen's Compensation Board which affirmed the referee in disallowing an award to the claimant for the death of her husband. The facts found by the compensation authorities, which we feel were sustained by ample competent evidence, are substantially as follows:

On or about June 7, 1933, the decedent, Charles Lauts-

baugh, was employed by the defendant as a farm hand on the latter's farm. For his services the decedent was to receive house rent, $12 per month in cash, fruit, vegetables, meats, etc., the value of which would not exceed the sum of $12 per week. The business of the defendant is that of farming and the deceased was hired for farm labor only. The defendant in connection with the operation of his farm produced milk which he sold to a milk company. For some time prior to the accident and death of the deceased, the defendant had been delivering the milk from his own and a few other farms in the immediate neighborhood on a truck owned by himself to the railroad station several miles from his farm. The milk was then shipped to Philadelphia and the defendant was paid at the rate of 20 cents per 100 pounds for delivery of the milk. He was paid by the milk company which deducted the amount from the checks due the farmers whose milk was collected by the defendant. This collection and delivery of milk was made once each day. About February 1, 1934, the deceased started to collect and deliver the milk, and although he did not do so daily, he did so most of the time after that date. While delivering the milk on June 20, 1934, the truck crashed into a tree and the deceased was killed. This work was done by the deceased in addition to his general farm work and he received no extra pay for it. It was also found that the defendant was not a common carrier and that the arrangement between the farmers was of a coöperative nature and defendant did not assume the role of a general hauler or carrier.

On an appeal of this nature the court is limited to a determination of the questions whether there is evidence to support the findings of the compensation authorities and whether the law has been properly applied. Where the findings are supported by competent proof, they and the inferences to be drawn therefrom are as conclusive as the verdict of a jury: Parkins v. Hillman Coal & Coke Co., 114 Pa. Superior Ct. 358.

There was ample evidence to sustain the foregoing facts. Therefore we are concerned only with the legal conclusions reached by the referee and the board in disallowing the claim on the ground that the decedent at the time of his injury and death was engaged in agricultural work and that the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of June 3, 1915, P. L. 777, does not apply.

The foregoing amending act provides that the Workmen's Compensation Act shall not "apply to or in any way affect any person who, at the time of injury, is engaged in domestic service or agriculture." The question before us, therefore, is whether or not the deceased was engaged in agriculture at the time of his injury and death. The claimant strenuously contends that the collection and delivery of milk by the defendant was an outside industrial pursuit not a part of his farming operation and hence subject to the Workmen's Compensation Act. The referee and the board concluded that the collection and delivery of the milk did not constitute a separate outside industrial operation, but that it was part of the defendant's regular business of farming. This conclusion, we believe, was a correct one.

The maintenance of a dairy and production of milk on the defendant's own farm as an incident of ordinary farming was an agricultural pursuit: Beyer v. Decker et al., 159 Md. 289, 150 Atl. 804. Similarly, the hauling of milk from the defendant's farm to the shipping point is an agricultural pursuit and an important incident of the defendant's business of farming: Bucher v. American Fruit Growers Co., 107 Pa. Superior Ct. 399. Hence, if deceased had been killed while hauling the milk from the farm of the defendant alone, he would undoubtedly be held to have been engaged in agriculture at the time. The production of milk and hauling it to market on each of the other farms here involved was likewise an agricultural pursuit. If each farmer's milk was hauled to market by his own employe, each employe would be engaged in agri-

culture. If the defendant and his neighbors joined together and had their milk hauled to market by a common employe (not an independent contractor), the latter would be engaged in agriculture. In such an event, as stated by the board, "the delivery of the milk was therefore incidental to the operation of the several farms included in the arrangement and constituted agricultural work." We think this conclusion can properly be reached on the present facts where through a common arrangement the milk of several neighboring farmers was hauled to market by the farm hand employe of one of them. A similar coöperative arrangement has led courts of other jurisdictions to declare that where several farmers combine in the purchase and operation of a threshing machine to thresh the wheat on their several farms, one who is injured while operating the machine is engaged in agriculture although the machine is occasionally used to thresh for outsiders: Jones et al. v. Industrial Commission of Utah et al., 55 Utah 489, 187 Pac. 833; Keefover v. Vasey et al., 112 Neb. 424, 199 N. W. 799.

The cases cited by claimant in support of her contention that the defendant in collecting and delivering milk was engaged in an outside industrial operation not connected with his farming do not convince us that what we have already said is wrong. In the first case cited, Strunk v. Keller, 75 Pa. Superior Ct. 462, a farmer entered into a contract to perform a logging operation to cut logs to be sold. His employe was killed while cutting logs. In Klein v. McCleary, 154 Minn. 498, 192 N. W. 106, a doctor owned a hunting and fishing camp and nearby owned a small farm. Plaintiff worked on both places and was injured while pulling stumps on the camp site. In Zumbrum v. Rudisill, 38 York 81, an employe was killed while cutting trees on defendant's farm in furtherance of the latter's business of cutting timber for sale on the market. In Warner v. Longstreth, 108 Pa. Superior Ct. 124, the defendant, a farmer, secured a contract to remove certain buildings from an adjoining farm and hired

three men to tear down the buildings. One of them, the plaintiff, was injured while so doing. In Hanna v. Matthews, 6 W. C. B. 313, the defendant owned a dairy and milk plant and the only grain raised was used to feed the cows. Claimant was injured at the plant while performing the work for which he was hired, sterilization and preparation of the milk for market. In Heyman v. Sloan, 13 W. C. B. 352, the defendant owned a farm on which he also worked a small mine. Claimant was injured while driving a team to haul stone to repair the road to the mine.

In each of these cases it clearly appears that the employe was injured or killed while engaged in an outside industrial operation not incidental in any way to the employer's farming operations. Claimant contends that to determine what constitutes a separate outside industrial operation there are two tests: (1) Was it a venture looking toward a separate source of profit, and (2) was the operation or work such that, as to location of effort and use of product, it was confined to the premises of the farmer employer? If both these tests are met, it is claimed, the venture is a separate outside industrial operation and not agriculture. These tests may be correct, but they do not apply in the case at bar. The defendant did not collect and deliver milk as a source of profit separate from his farming operations. To get his own milk to market was agricultural and the testimony shows that his primary purpose was to get his own milk to market as cheaply as possible and thus increase his profits on the sale of milk; that the arrangement benefited the defendant in that it offset the expense of getting his milk to market and permitted him to do his milking at a later hour. The testimony also shows that the defendant daily collected and delivered 1000 pounds of milk, 100 pounds of which came from his own farm. He received 20 cents per 100 pounds for hauling the milk of others. Hence his daily income for hauling milk was $1.80. In view of the fact that the hauling involved considerable effort and

the traveling of several miles and the cost of operation and maintenance of a truck, it can hardly be said that it was a source of any considerable profit. All these facts tend to show that the primary purpose of the defendant was to get his own milk to market as cheaply as possible. This inference is also warranted by the lack of any evidence that the defendant endeavored at any time to increase the number of neighbors for whom he hauled milk. Had he been hauling milk to make a profit entirely separate from his farming, he would doubtless have tried to increase the number of farmers for whom he hauled. As to the second test suggested we must always remember that the defendant was hauling his own milk and that was an incident of agriculture.

That a farmer may, through an employe, perform services for another for the ultimate purpose of aiding or furthering his own farming business and in so doing be regarded as engaged in agriculture is shown in McAllister v. Cobb et al., 237 App. Div. 674, 263 N. Y. Supp. 349; Powell v. Industrial Commission of Wisconsin et al., 193 Wis. 38, 213 N. W. 651. In the first case, a farmer sent his employe to saw wood with a buzz saw for a neighbor, who in return was to work on the employer's farm. In the second case, a farmer sent his employe to cut wood for a neighbor, who in return was to assist the employer in baling hay on the latter's farm. In each case it was held that the employe was engaged in agriculture.

As stated in Bucher v. American Fruit Growers Co., 107 Pa. Superior Ct. 399, 403, the test is the general character of the contract of employment. The deceased was hired as a farm hand, and in taking the milk to market was still engaged in agriculture. The collection and delivery of the milk was not a separate outside industrial operation which was not a part of the defendant's farming operation: Strunk v. Keller, 75 Pa. Superior Ct. 462. To utilize the language of Warner v. Longstreth, 108 Pa. Superior Ct. 124, 126, if the collection and delivery of milk "was merely incidental to the carrying on of defend-

ant's activities as a farmer and connected therewith, although the particular employment in which the servant was engaged at the time of the accident was not strictly speaking farming he might still be regarded as engaged in agriculture."

We feel that because deceased was hauling milk from defendant's farm he was engaged in agriculture. The hauling of milk for others was done to offset the expense of hauling defendant's milk and thus to increase his profits from milk. It was not a separate source of profit and was not a separate outside industrial operation which was not a part of or not incidental to defendant's farming operation, and hence was an agricultural pursuit. Or the case may be viewed as by the referee: "From all the evidence offered your referee finds that this milk delivery did not constitute a separate outside industrial operation, but that it was a part of his (defendant's) regular business of farming." Or, again, we may consider the case as did the board: "The delivery of the milk therefore was incidental to the operation of the several farms included in the arrangement and constituted agricultural work."

And now, July 11, 1935, the exceptions filed to the findings of the Workmen's Compensation Board are overruled, the appeal is dismissed, and judgment is now entered in favor of the defendant and against the claimant.                    From Francis B. Sellers, Jr., Carlisle.