EARL HAWTHORNE, APPELLEE, V. CHARLES HAWTHORNE, APPELLANT.

167 N. W. 2d 564

Filed May 2, 1969. No. 37140.

Brower & Treadway, for appellant.

Sampson & Armatys and Kenneth H. Elson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is a workmen's compensation case. The primary issue presented on the appeal is whether the defendant was an employer of "farm or ranch laborers" within the provisions of section 48-106, R. R. S.1943, and therefore exempt from liability under the provisions of the Nebraska Workmen's Compensation Act. The one judge Workmen's Compensation Court dismissed plaintiff's action. The full Workmen's Compensation Court awarded compensation for loss of an eye. That award was affirmed on appeal to the district court. We affirm the district court judgment.

The plaintiff, Earl Hawthorne, was 65 years old in February 1968. After completing an eighth grade education, he had worked on farms in his early years. For some years prior to 1961, the plaintiff had worked in Oregon as a shop foreman doing all kinds of mechanical work in a repair shop. Apparently since 1961, and perhaps prior to the 1960's, he had again lived on a farm, and at the time of the accident here was living on a farm near Hordville, Nebraska. The plaintiff first started to work for the defendant in the early 1960's driving a truck. From at least 1963 on, the plaintiff worked for the defendant running a combine in defendant's custom combining business. His agreed wage was $2 per hour.

Plaintiff also, from time to time, did mechanical work on the combines. He also did mechanical work on defendant's trucks or vehicles from time to time. The plaintiff kept his own time record, in which he recorded each day the hours he had worked that day for the defendant. After the fall combining was completed each year, the defendant would settle with the plaintiff for the work done by the plaintiff, after deducting the regular contract price for combining grain for the plaintiff.

The defendant, Charles Hawthorne, was 63 years old and the brother of the plaintiff, Earl Hawthorne. Charles Hawthorne was in the business of trucking and custom combining. His income tax return shows his occupation as "Machine Work," and that in the year 1965, he purchased $9,804.92 worth of equipment qualified for investment credit. He filed no farm schedule. He did not own or operate a farm in any of the years 1961 through 1966. The defendant's combine work was done for the public and involved the combining of wheat, oats, milo, maize, and corn. The business was conducted primarily in Nance and Merrick Counties in Nebraska, but sometimes in the State of Kansas also. The defendant used two combines in his custom work prior to and during 1966. The defendant sold one of the combines to his son, Larry Hawthorne, in 1966, but both combines were still used for all of the custom combining work the defendant did in 1966.

The defendant's fall combining season began in early October. On October 3, 4, and 5, 1966, the plaintiff, Earl Hawthorne, worked on both combines, putting on cabs and getting them in condition for the fall season. They were located at the defendant's place when the plaintiff did this mechanical work. The plaintiff's time record shows continuous work for the defendant from October 3, 1966, to November 10, 1966, the day of the accident. On October 26, 1966, the plaintiff did mechanical work changing the combine heads for popcorn. The plaintiff

also did maintenance work on the machines from time to time.

On November 8, 1966, after finishing a combining job, the combining crew moved to a 90-acre farm of Larry Hawthorne, the defendant's son, where they worked about half an hour. They worked 9 hours there on November 9, 1966, and continued on November 10, 1966, until late in the morning, when the sieves on the combines plugged with snow and they shut down. On the combining crew, the plaintiff operated one combine, Larry Hawthorne operated the other, and the defendant, Charles Hawthorne drove a truck.

After they shut down, the Hawthornes had lunch. After lunch, the plaintiff began the work of changing the bearings on the combine owned by Larry Hawthorne. In doing this work, he hit the brace of the bearing with a hammer and a chip of steel struck him in the eye. The accident resulted in the loss of his eye, which was removed and replaced with an artificial eye.

There is direct conflict in the testimony as to the circumstances surrounding the work on the machine. The plaintiff testified that the defendant said to him: "Let's get the bearings put in." Plaintiff then got a tool and commenced the work while the defendant watched him.

The defendant's testimony was that he, the defendant, started to work on the combine himself, and that the plaintiff started work also. The defendant testified: "I didn't tell him to, and Larry didn't tell him to, no one did." Larry and the plaintiff both testified that Larry was not there when the accident happened. There is no dispute but that the combine was in need of repair at the time of the accident, and that there was other custom combining to be done after the current job was finished.

Aside from the major issue, it was defendant's contention that there was no employer-employee relationship between plaintiff and defendant at the time of the

injury, but that the plaintiff was performing casual or exchange labor and, in any event, was working for Larry Hawthorne and on Larry's combine. We think the plaintiff established that he was, at the time of his injury, an employee of the defendant and was not performing casual or exchange labor. The defendant, after the injury, personally completed the plaintiff's time book, crediting him with 4 hours of work on November 10, 1966, although the combining work on that day was only 2½ hours. The defendant paid the plaintiff for that work when they settled up a few weeks later. Larry Hawthorne had not hired or employed the plaintiff, nor paid him any wages. The defendant furnished and filed a W-2 income tax form showing that he had paid wages of $421.75 to the plaintiff in 1966. The trial court was correct in finding that the plaintiff was an employee of the defendant at the time of his injury.

The crucial issue here is whether or not the defendant was an employer "of farm or ranch laborers" within the meaning of the Nebraska Workmen's Compensation Act. Section 48-106, R. R. S. 1943, subsection (1), provides that the provisions of the Workmen's Compensation Act apply "to every employer in this state, including nonresident employers performing work in the State of Nebraska, employing one or more employees, in the regular trade, business, profession, or vocation of such employer, except railroad companies engaged in interstate or foreign commerce."

Subsection (2) provides in part: "The following are declared not to be hazardous occupations and not within the provisions of this act: Employers of household domestic servants and employers of farm or ranch laborers, * * *." The remainder of section 48-106, R. R. S. 1943, provides for elective coverage by the two categories of exempt employers.

There has been a wide range of diversity in the judicial decisions outlining the scope of farm or agricultural exemptions under Workmen's Compensation Acts. Vary-

ing statutes make direct comparisons difficult in many cases. The controversial or borderline cases which frame the boundaries of the exemption fall largely into two groups: "Those which involve classifying activities on the borderline between old-fashioned farming and commercial production or processing related to agricultural commodities, and those which involve employees who work at one time in agricultural and at another in nonagricultural pursuits." 1A Larson, Workmen's Compensation Law, § 53.30, p. 938. The case before us involves both categories.

As this court said in Campos v. Tomoi, 175 Neb. 555, 122 N. W. 2d 473: "The place where the work is being performed, the nature of the task the employee is performing at the time, and the purposes for which he was hired, and the nature of the employer's occupation have been deemed controlling in different cases."

That case held that a group of farmers operating a commercial hay grinding business may not, during the course of the operation of said separate business, be deemed employers of farm laborers within the meaning of the Nebraska Workmen's Compensation Act. In that case, we quoted with approval: "A workman is not a farm laborer simply because at the moment he is doing work on a farm; nor because the task on which he is engaged happens to be what is ordinarily considered farm labor. * * * Neither the pending task nor the place where it is being performed is the test. The whole character of the employment must be looked to to determine whether he is a farm laborer."

In the case before us there is little question but that the "regular trade, business, profession, or vocation" of the defendant employer was "Machine Work" for the public, and operated for commercial purposes. The plaintiff was hired to operate and keep combines in repair and to perform whatever work the defendant contracted for in the operation of the defendant's regular business of custom combining. The defendant's business is dis-

tinguishable from the regular trade, business, profession, or vocation of farming or ranching, even though his equipment and services were contracted for or used only by customers who were themselves engaged in farming or ranching operations. The defendant in this case was furnishing his regular business equipment and services to his son. The fact that no charge was made does not destroy the commercial nature of the business, nor remove the employee from the coverage of the Workmen's Compensation Act. Employees and employers do not dart in and out of coverage with every momentary change in activity. See 1A Larson, Workmen's Compensation Law, § 53.40, p. 946.

We take judicial notice of the fact that old-fashioned farming and ranching contemplated by the Legislature at the time of the adoption of the Workmen's Compensation Act has been extensively affected by mechanization, specialization, and scientific advancement. The growth in the size of farms and the constantly accelerating changes in methods and machines, together with spiraling costs, have spawned a multitude of commercial businesses which provide equipment and specialized services for farmers and ranchers. These developments have, in some cases, created a type and kind of regular commercial business separate and distinct from farming and ranching. As to commercial activities by farmers generally, see, 1A Larson, Workmen's' Compensation Law, §§ 53.33, 53.34, p. 944; Skreen v. Rauk, 224 Minn. 96, 27 N. W. 2d 869; Campos v. Tomoi, *supra*.

An employer engaged in custom combining for the public as a regular commercial business is not an employer of "farm or ranch laborers," and an employee of such an employer is within the provisions of the Nebraska Workmen's Compensation Act. A farmer engaged in doing his own combining or in combining for others casually, or upon an exchange work basis, does not come within the scope of this holding.

The findings and judgment of the trial court were

correct in all respects, and the judgment is affirmed.

AFFIRMED.