CHRISTOPHER L. OTTO, APPELLANT, V.
LEE HAHN, APPELLEE.

306 N.W.2d 587

Filed June 5, 1981. No. 43504.

Law Offices of Kenneth Cobb, P.C., and John B.

McCauley and Law Office of Lynn D. Hutton, Jr., P.C., for appellant.

James G. Egley of Moyer, Moyer & Egley for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

The appellant, Christopher L. Otto, has appealed from an order of the Workmen's Compensation Court dismissing his petition for disability benefits. The one-judge Workmen's Compensation Court found that Otto was an exempt farm laborer and was therefore not entitled to benefits under the Workmen's Compensation Act. Upon rehearing by a three-judge panel, pursuant to Neb. Rev. Stat. § 48-179 (Reissue 1978), the original order was affirmed and the petition dismissed. The appellant assigns as error the failure to award compensation, the failure to find that farming is a hazardous occupation, and the refusal of the court to declare the farm laborer exemption in violation of the fourteenth amendment of the U.S. Constitution. We affirm.

Christopher Otto was a full-time employee of the defendant, Lee Hahn, and was the victim of an accident which occurred while Otto was tearing out some steps leading to the defendant's farmhouse. While pulling a nail out of the steps with a flat bar, the nail broke off and flew up and struck Otto in the right eye. As a result of the accident the retina became detached, and as of January of 1980 the vision in Otto's right eye was limited to light perception.

The duties of the appellant's employment included cleaning pigpens, feeding cattle and pigs, plowing, disking, building fences and pens, and various miscellaneous jobs on the farm. Otto worked approximately 45 hours per week, and worked only for the defendant on his farm and at no other location.

It is well established that a workman is not a farm laborer simply because he is doing work on a farm, nor

because the task on which he is engaged happens to be what is ordinarily considered farm labor. The whole character of the employment must be considered to determine whether he is a farm laborer. *Campos v. Tomoi*, 175 Neb. 555, 122 N.W.2d 473 (1963); *Hawthorne v. Hawthorne*, 184 Neb. 372, 167 N.W.2d 564 (1969). A review of the whole character of Otto's employment supports the conclusion that he is a farm laborer within the meaning of the Workmen's Compensation Act.

Employers of farm laborers have been exempted from the act since its inception. "(2) The following are declared not to be hazardous occupations and not within the provisions of this act: Employers of household domestic servants and employers of farm or ranch laborers . . . ." Neb. Rev. Stat. § 48-106(2) (Reissue 1978).

The appellant argues that the classification of farming as a nonhazardous occupation is unreasonable and arbitrary and therefore a violation of the equal protection clause of the fourteenth amendment. Evidence was presented to prove that farming is one of the most hazardous occupations existing today. The appellant contends that the character of farming has changed since the early part of this century when the Workmen's Compensation Act was first adopted, and the classification of farming as nonhazardous may have been reasonable then, but by present standards it is unjustified.

What legislative history we have been able to find indicates that the Legislature never made a legislative finding that farming is nonhazardous. It appears that the description in the exclusion was merely the result of bill drafting and various amendments. "SECTION 1. The common law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial conditions. . . . SEC. 2 *There is a hazard in all employment,* but certain employments have come to be, and are recognized as being inherently constantly dangerous. This act is intended to apply to all such inherently hazardous works and occupations . . . ." House Roll No. 193, pp. 1-2,

Thirty-third Session, 1913. (Emphasis supplied.) The bill went further and listed specifically all such extra-hazardous occupations. The Senate bill as introduced was in the same language. Senate File No. 1, pp. 1-2, Thirty-third Session, 1913. The latter bill was amended to even more exhaustively enumerate the occupations to which the act was to apply, with the result being a list of vocations one and one-half single-spaced legal sized pages long. Committee of the Whole Amendments, Senate File No. 1, April 4, 1913. The bill was again amended by a House Committee, and the result, which more nearly resembles the current statute, removed the long list of occupations and substituted the following:

"Sec. 6. (1). The provisions of this act shall apply to the State of Nebraska and every governmental agency created by it, and every employer in this state employing five or more employees, in the regular trade, business, profession or vocation of such employer.

"(2). The following are declared not to be hazardous occupations and not within the provisions of this act; employers of household domestic servants, employers of farm laborers and all employers employing less than five employees, in the regular trade, business, profession or vocation of such employer . . . ." House Committe of the Whole Amendments to Senate File No. 1, Thirty-third Session, April 14, 1913.

It appears that the use of the term "hazardous" in the amendment relates back to the intent of the legislators to cover employments considered to be inherently constantly dangerous. Certain employments were intended to come within the provisions of the act and others were intended to be excluded. In order to shorten the list of included occupations, the legislators decided to include all employers with certain exceptions. It is unfortunate that they used the term "not hazardous" in the exclusion, since they clearly recognized that there is a hazard in all employment. It is equally clear that they did not intend to extend the provisions of the act to employers of domestic servants, employers of farm la-

borers, and all employers employing less than five employees in any other vocation. It would, of course, be ridiculous to assume that the Legislature believed that there is a hazard where five employees work, and there is no hazard where only four are working on the identical job.

"It is the intent of the Legislature with which we are here concerned. In determining that intent, we consider the history of the legislation and the reasonableness of an interpretation when weighed against an unreasonable or absurd construction evidently not intended by the Legislature." *Johnson v. School Dist. of Wakefield,* 181 Neb. 372, 376, 148 N.W.2d 592, 595 (1967).

It becomes apparent that farm laborers were excluded from the act not because farming is nonhazardous but because the Legislature chose not to extend the coverage of the act to that class for a possibly political or social reason. The question we must decide is not whether the legislative classification of farm labor as "nonhazardous" is unreasonable, but whether the Legislature can exempt farm laborers as a class from the act without contravening the equal protection clause of the fourteenth amendment.

The classification is tested by the standard of *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970): "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69-70. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to

justify it.' *McGowan v. Maryland,* 366 U.S. 420, 426."

The equal protection clause does not require the Legislature to choose between attacking every aspect of a problem or not attacking the problem at all; it is sufficient if the action taken is rationally based and free from invidious discrimination. *Prendergast v. Nelson,* 199 Neb. 97, 256 N.W.2d 657 (1977). "Refined analysis and simplistic logic when applied to the practical impact of a particular classification produces many times an appearance of inequality and discrimination. This is especially true close to the borderlines. But the sharpness of the lines drawn does not create an irrationality of classification or an invidious discrimination. This is particularly true when the sword of legislative policy deals with broad problems of economics and social welfare." *Thompson v. Board of Regents of University of Nebraska,* 187 Neb. 252, 256, 188 N.W.2d 840, 843 (1971).

In every constitutional challenge there attaches the presumption that all acts of the Legislature are constitutional with all reasonable doubts resolved in favor of constitutionality. *American Fed. of S., C. & M. Emp. v. Dept. of Public Institutions,* 195 Neb. 253, 237 N.W.2d 841 (1976). In reviewing the statute we do not pass judgment on the wisdom or the necessity of the legislation, nor whether the statute is based upon assumptions which are scientifically substantiated. Even misguided laws may nevertheless be constitutional. *Stoehr v. Whipple,* 405 F. Supp. 1249 (D. Neb. 1976).

The appellant cites, as support for the proposition that the farm labor exemption is a denial of equal protection, *Gallegos v. Glaser Crandell Co.,* 388 Mich. 654, 202 N.W.2d 786 (1972). The Michigan Supreme Court determined that the classification of agricultural employers for different treatment under the Michigan Workmen's Compensation Act is a violation of the equal protection clause. We do not find that holding particularly persuasive, especially since the Michigan act does not exclude all agricultural workers, but makes distinc-

tions based upon those agricultural workers who are paid on a piecework basis and those who do not work 35 or more hours per week for the same employer for 13 or more consecutive weeks. That decision has not, as some commentators expected, started a trend toward invalidating agricultural exemptions. 1C Larson, Workmen's Compensation Law § 53.10, n. 84 (1981); Note, *Workmen's Compensation Laws and Equal Protection: Does GALLEGOS Portend the Demise of the Agricultural Exclusion?* 1973 Duke L.J. 705.

The appellant further cites *Benson v. N.D. Workmen's Comp. Bureau,* 283 N.W.2d 96 (N.D. 1979), which agreed with the trial court's conclusion that the exclusion of agricultural employees from the benefits of the Workmen's Compensation Act was unreasonable and contrary to the expressed purpose of the act. Although the court affirmed the award of benefits to Benson, an agricultural employee, it was unable to declare the agricultural exclusion unconstitutional because it failed to have a concurrence of four members of that court.

A challenge similar to the case at bar was presented to the Supreme Court of Montana in *State ex rel. Hammond v. Hager,* 160 Mont. 391, 503 P.2d 52 (1972). That court discussed the various reasons that its legislature may have had for the agriculture exclusion and determined that the petitioner had not met his burden to negative every conceivable basis which might support the legislative action. The claimant in the case of *Anaya, Jr. v. Indust. Comm.,* 182 Colo. 244, 247, 512 P.2d 625, 626 (1973), met the same fate: "It is not our province to comment on the logic or policy of the General Assembly in making this exclusion. Rather, our duty is to determine whether there is a reasonable basis for this classification. We think there is and, at least, with a presumption of constitutionality, the petitioner has failed to overcome that presumption."

Even more recently the New Mexico Court of Appeals was called upon to interpret the scope of the farm and ranch workers' exemption to the Workmen's Compensa-

tion Act. "Cueto also seems to argue that the exemption denies him equal protection. It does not; the exemption is not arbitrary, but has a reasonable basis." *Cueto v. Stahmann Farms, Inc.*, 94 N.M. 223, 224, 608 P.2d 535, 536 (1980).

A parallel can be found in federal case law which involves the agricultural exclusion from the unemployment compensation laws. There the exclusion has also been held to be constitutional.

"When the legislature chooses to inaugurate a reform as sweeping as that which is represented by unemployment compensation, it is often forced to make compromises which, whether in the name of politics or economy, are often impossible of explanation in strictly legal terms. Realizing this, the Courts have refused to require that the State remedy all aspects of a particular mischief or none at all. [Citations omitted.] Hence the exclusion of agriculture from unemployment compensation can be seen as an indirect subsidy of a 'beneficent enterprise', or as an effort to save the compensation fund from the drain which would result from the inclusion of another large 'deficit industry', or even as a necessary political compromise without which it would have been impossible to inaugurate a most important reform in American institutions. Whether all of this is good policy is of course not the question before us. We can only ask if these justifications are rational by the loose standards of *Carmichael, Steward Machine*, and *Dandridge*, cit. *supra*. We conclude that they are." *Romero v. Hodgson*, 319 F. Supp. 1201, 1203 (N.D. Cal. 1970), *aff'd*, 403 U.S. 901, 91 S. Ct. 2215, 29 L. Ed. 2d 678 (1971).

*Romero* was treated as controlling precedent in *Doe v. Hodgson*, 344 F. Supp. 964 (S.D.N.Y. 1972). The latter case was an action brought by nine agricultural laborers challenging the constitutionality of certain federal and state legislations' exclusions of benefits and protection from agricultural workers. Five federal officials and three state officials were named as defendants, including the chairman of the Workmen's Compensation Board. The court determined that *Romero* was control-

ling even though the challenge in the earlier case was limited to unemployment compensation. The tax scheme is the same and "the court perceives . . . no sound basis for reconsidering at this level a recent decision of the Supreme Court following the thus far settled course of adjudging statutes singly, with an eye to their distinct rationales and asserted justifications, for purposes of constitutional tests." *Doe* at 968.

We therefore conclude that in the area of economics and social welfare the Legislature is not required to make the choice between attacking every aspect of a problem or not attacking the problem at all, as long as the action has a rational basis and is free from invidious discrimination. The appellant has not met his burden of proving that there is no rational basis for the classification of farm labor employers, and has not overcome the presumption of constitutionality. The judgment of the Workmen's Compensation Court is affirmed.

AFFIRMED.