LYLE D. LARSEN, APPELLEE, V.
D B FEEDYARDS, INC., APPELLANT.
648 N.W.2d 306

Filed July 26, 2002.    No. S-01-839.

Walter E. Zink II and Jenny L. Panko, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Clarence E. Mock and Denise E. Frost, of Johnson & Mock, and Brent M. Bloom for appellee.

Jacqueline M. Tessendorf, of Mattson, Ricketts, Davies, Stewart & Calkins, for amicus curiae Nebraska Cattlemen, Inc.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

Lyle D. Larsen was employed by D B Feedyards, Inc., on November 13, 1999, when he was injured while roping a steer owned by a customer of D B Feedyards. Larsen filed a petition against D B Feedyards in the Workers' Compensation Court seeking benefits for his injury. D B Feedyards answered by asserting that because it was an employer of farm or ranch laborers, it was excepted from the Nebraska Workers' Compensation Act under Neb. Rev. Stat. § 48-106(2) (Reissue 1998). The trial judge rejected D B Feedyards' defense and determined that Larsen was a covered employee. The review panel of the Nebraska Workers' Compensation Court affirmed. D B Feedyards appeals.

## FACTS

This case was tried on stipulated facts. D B Feedyards is a Nebraska corporation with its principal place of business located slightly southeast of Craig, Nebraska. Daryl Bromm and his wife, Shirley Bromm, are the sole shareholders in the corporation. Daryl, Shirley, and their son Rodney Bromm are the only officers of the corporation. D B Feedyards was incorporated in 1973 and has remained incorporated since that time.

D B Feedyards began operation as a feedlot to feed livestock owned by Daryl and Rodney. Approximately 12 to 15 years ago, however, D B Feedyards began feeding cattle owned by other per-

sons or entities. D B Feedyards charges a fixed amount per head, per day for the cattle it feeds owned by others. D B Feedyards averages 5,000 head of cattle on feed. At any given time, one-half to three-fourths of the cattle on the feedlot are owned by persons or entities other than D B Feedyards. Although it does not do any formal advertising, D B Feedyards provides calendars and baseball caps bearing its name to its customers. D B Feedyards occasionally solicits customers to have their cattle fed at its feedlots. D B Feedyards receives separate income for its feeding operation and files a separate corporate income tax return each year. D B Feedyards' gross revenue for the period July 1, 1999, through July 1, 2000, was $5,122,186.

D B Feedyards owns 440 acres of farm ground in its own name, which it farms. The feedlot area, including the offices, scales, and Daryl and Shirley's residence, covers 160 acres. Crops raised on the farm are delivered to the feedlot for use as cattle feed, and manure from the feedlot is spread on the farmland. D B Feedyards owns farm equipment consisting of a combine, two payloaders, and several tractors, as well as two trucks used in its feeding operations.

At all relevant times, D B Feedyards employed three employees, including Larsen. Larsen is a professional roper who was hired to perform general labor, which included sorting and treating sick cattle. On November 13, 1999, Larsen injured his right thumb while roping a steer. The steer was owned by an entity other than D B Feedyards.

On March 8, 2000, Larsen filed a petition in the Workers' Compensation Court seeking benefits for the injury to his right thumb. In its answer, D B Feedyards asserted that Larsen was employed as a farm or ranch laborer under § 48-106(2) and therefore was not a covered employee under the provisions of the Nebraska Workers' Compensation Act. By joint stipulation of the parties, the case was bifurcated so that the trial judge could first determine whether D B Feedyards fit within the exception.

In an order filed January 22, 2001, the trial judge resolved this issue in favor of Larsen, concluding:

> The Court finds that the enterprise [D B Feedyards] was engaged in on November 13, 1999, while [Larsen] was roping a steer and was injured was a commercial business

separate and distinct from farming and ranching. The sheer size of [D B Feedyards'] operation shows that it is more in the nature of a commercial enterprise rather than on [sic] old-fashioned farm and ranch operation. Employers operating businesses performing commercial services primarily for others, even though the task performed may commonly occur on a farm or a ranch, do not employ "farm or ranch laborers" within the meaning of Nebraska Revised Statute, Section 48-106.

This decision was affirmed without an opinion by a three-judge review panel of the Workers' Compensation Court. D B Feedyards perfected a timely appeal to the Nebraska Court of Appeals and filed a petition to bypass, which we granted.

## ASSIGNMENTS OF ERROR

D B Feedyards assigns, restated, that the trial judge's decision as affirmed by the review panel erred as a matter of law in its determination as to Larsen's injury sustained on November 13, 1999, that D B Feedyards was not an excepted employer within the meaning of § 48-106(2) and therefore in its conclusion that Larsen was a covered employee subject to the provisions of the Nebraska Workers' Compensation Act.

## STANDARD OF REVIEW

■ An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Rodriguez v. Monfort, Inc.*, 262 Neb. 800, 635 N.W.2d 439 (2001); *Thornton v. Grand Island Contract Carriers*, 262 Neb. 740, 634 N.W.2d 794 (2001); *Foote v. O'Neill Packing*, 262 Neb. 467, 632 N.W.2d 313 (2001).

## ANALYSIS

*Jurisdiction.*

■ Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Scottsdale Ins. Co. v. City of Lincoln*, 260 Neb. 372, 617 N.W.2d 806 (2000); *Billingsley v. BFM Liquor Mgmt.*, 259 Neb. 992, 613 N.W.2d 478 (2000); *Airport Auth. of Village of Greeley v. Dugan*, 259 Neb. 860, 612 N.W.2d 913 (2000). For an appellate court to acquire jurisdiction

of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *Chief Indus. v. Great Northern Ins. Co.*, 259 Neb. 771, 612 N.W.2d 225 (2000); *Thompson v. Kiewit Constr. Co.*, 258 Neb. 323, 603 N.W.2d 368 (1999). When an appellate court is without jurisdiction to act, the appeal must be dismissed. *Thompson v. Kiewit Constr. Co., supra.*

Larsen argues that because the trial judge's order merely gave him the opportunity to proceed to the merits of his claim and did not resolve the issue of compensation, the order is not final and may not be appealed. We disagree.

The three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. See, Neb. Rev. Stat. § 25-1902 (Reissue 1995); *State v. Gibbs*, 253 Neb. 241, 570 N.W.2d 326 (1997); *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997); *Tess v. Lawyers Title Ins. Corp.*, 251 Neb. 501, 557 N.W.2d 696 (1997). It is well settled that a workers' compensation case is a "special proceeding" for appellate purposes. See *Thompson v. Kiewit Constr. Co., supra.* The order of the trial judge as affirmed by the review panel eliminated what would have been a complete defense to the claim and thus affected a substantial right of D B Feedyards. See *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998). Accordingly, we have jurisdiction of this appeal.

*Larsen as Covered Employee.*

D B Feedyards appeals the decision of the trial judge as affirmed by the review panel concluding that Larsen was covered under the Nebraska Workers' Compensation Act. D B Feedyards specifically claims that because it was engaged in the business of farming or ranching, it is an excepted employer under § 48-106(2) and that, therefore, its employee Larsen was not covered by the Nebraska Workers' Compensation Act. Larsen argues in response that D B Feedyards was primarily engaged in a commercial

enterprise, that D B Feedyards is not an excepted employer, and that the trial judge correctly concluded that Larsen was an employee covered by the Nebraska Workers' Compensation Act. In view of the statute, the case law, and the facts of this case, we agree with the conclusion of the trial judge as affirmed by the review panel that Larsen was a covered employee.

The Nebraska Workers' Compensation Act applies to employers described in § 48-106(1), but it does not apply to employers identified in § 48-106(2). The statutory language at issue in this case, § 48-106(2), provides in pertinent part, "The following are . . . not within the provisions of the Nebraska Workers' Compensation Act: . . . employers of farm or ranch laborers . . . ." We long ago observed that the agricultural exception statutes in other states generally focus on the characteristics of the laborer who is excluded from workers' compensation coverage, whereas under Nebraska's statutory language, the agricultural exception focuses on the employer of such laborer. In *Keefover v. Vasey*, 112 Neb. 424, 427, 199 N.W. 799, 800 (1924), we specifically stated, "It is worthy of note that in these other states the emphasis seems to be placed upon the exclusion of the laborer, while in this state it rests upon the exclusion of the employer of such labor." We have further noted that the classification of the exception as a function of the employer's status is a legislative prerogative. *Id.* See, also, *Leppert v. Parker*, 218 Neb. 63, 352 N.W.2d 180 (1984); *Otto v. Hahn*, 209 Neb. 114, 306 N.W.2d 587 (1981).

In keeping with the language of § 48-106(2) excepting "employers" of farm and ranch laborers, our recent cases have emphasized that it is the nature of the employer's business which determines the exception. In *Leppert v. Parker*, we said, "It is clear from both the statute and the cases that it is the nature of the employer's business which determines the exemption, and not the work performed by the employee." 218 Neb. at 67, 352 N.W.2d at 182. See, also, *Bartunek v. Becker*, 222 Neb. 126, 382 N.W.2d 300 (1986). In *Leppert v. Parker*, we observed that although the emphasis is on the employer's operation in a § 48-106(2) analysis, the cases arising under § 48-106(2) nevertheless show that a case-by-case factual examination is required. In this regard, although the task the employee is performing at the time of the injury is relevant to the inquiry, see *Leppert v.*

*Parker, supra,* and *Campos v. Tomoi,* 175 Neb. 555, 122 N.W.2d 473 (1963), the fact that the injury occurred on the farm or ranch and the fact that the work itself could be characterized as farm or ranch labor does not control whether the employee is covered. *Campos v. Tomoi, supra.*

The farming exception under discussion was enacted in 1913, and the exception for ranching was added in 1945. 1913 Neb. Laws, ch. 198, § 6(2), p. 580; 1945 Neb. Laws, ch. 111, § 1, p. 356. More than 30 years ago, we acknowledged that

> old-fashioned farming and ranching contemplated by the Legislature at the time of the adoption of the [Nebraska Workers'] Compensation Act has been extensively affected by mechanization, specialization, and scientific advancement. The growth in the size of farms and the constantly accelerating changes in methods and machines, together with spiraling costs, have spawned a multitude of commercial businesses which provide equipment and specialized services for farmers and ranchers. These developments have, in some cases, created a type and kind of regular commercial business, separate and distinct from farming and ranching.

*Hawthorne v. Hawthorne,* 184 Neb. 372, 378, 167 N.W.2d 564, 567 (1969). It has been stated that "[s]ometimes intensive specialization, if carried too far, is enough to transform agriculture to commerce." 4 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 75.03[5] at 75-13 (2002).

■ Given the realities of modern farming and ranching, we have observed that under the Nebraska Workers' Compensation Act, an employer may be engaged in several businesses. *Bartunek v. Becker, supra.* In *Brown v. Leavitt Lane Farm,* 215 Neb. 522, 527, 340 N.W.2d 4, 8 (1983), we held that "one employer may engage in two separate businesses, one subject to the workmen's compensation law and one exempt from that law." We also stated:

> "[T]he fact that an employer is engaged in farming does not remove from the coverage of the statute another business or occupation carried on by the employer which is otherwise within the coverage of the [workers' compensation] statute, nor does it subject the farming business to the statute."

*Id.* at 527, 340 N.W.2d at 8 (quoting 99 C.J.S. *Workmen's Compensation* § 33 (1958)).

D B Feedyards emphasizes on appeal that its operations are in the nature of farming and ranching and that the trial judge's determination that D B Feedyards was not excepted from the Nebraska Workers' Compensation Act for purposes of this case is in error. We do not agree. In the instant case, the parties stipulated to the facts, and the determinations made by the trial judge derived from the stipulation are supported by the record and the law.

The trial judge focused on the activities of the employer, as he should under § 48-106(2). See, *Bartunek v. Becker,* 222 Neb. 126, 382 N.W.2d 300 (1986); *Leppert v. Parker,* 218 Neb. 63, 352 N.W.2d 180 (1984). The record shows that D B Feedyards offers a specialized service to its customers, the feeding of cattle. See *Hawthorne v. Hawthorne, supra.* The trial judge found that in connection with Larsen's claim, D B Feedyards was set up as a commercial business on November 13, 1999, when and where Larsen was injured. The facts that D B Feedyards averages 5,000 head of cattle on feed, one-half to three-fourths of which are owned by customers of D B Feedyards, and that Larsen was injured while roping a steer which was owned by a customer of D B Feedyards support the trial judge's decision that Larsen was performing tasks for a commercial employer and thus not a farm or ranch laborer within the meaning of the workers' compensation law.

D B Feedyards appears to urge on appeal that because D B Feedyards is engaged in farming and ranching for its own account, it cannot also be a commercial enterprise for purposes of § 48-106(2). Contrary to D B Feedyards' assertion on appeal, the trial judge's determinations do not preclude the existence of two businesses being operated by D B Feedyards such that one is commercial and subject to the workers' compensation laws and the other is excepted from the workers' compensation laws under § 48-106(2). See, *Bartunek v. Becker, supra; Brown v. Leavitt Lane Farm, supra.* The tasks Larsen was performing when and where he was injured in this case were for the benefit of a separate commercial business conducted by D B Feedyards, which enterprise consists of feeding the cattle of the customers

of D B Feedyards. The trial judge's conclusion, as affirmed by the review panel, that D B Feedyards was not an employer excepted from the compensation laws under § 48-106(2) in this case was correct. The judgment is affirmed.

## CONCLUSION

For the reasons discussed above, we conclude that the trial judge as affirmed by the review panel did not err in determining that D B Feedyards was not excepted from the Nebraska Workers' Compensation Act as an employer of farm or ranch laborers in this case. The judgment is affirmed.

AFFIRMED.

HENDRY, C.J., not participating.

STEPHAN, J., dissenting.

I agree with the majority that under Nebraska law, it is the nature of the employer's business, and not the work performed by the employee, that determines whether the employer is exempt from the workers' compensation laws. See *Leppert v. Parker*, 218 Neb. 63, 352 N.W.2d 180 (1984). However, I cannot accept the majority's premise that D B Feedyards was engaged in two separate and distinct enterprises, one agricultural and one commercial, differentiated solely by the ownership of the cattle on feed. Nor can I accept the majority's decision to determine the applicability of the farm or ranch laborer exemption based upon the narrow and irrelevant question of whose steer was being roped at the time of the injury. In my view, all of the employer's operations fell within the farm or ranch laborer exemption codified at Neb. Rev. Stat. § 48-106(2) (Reissue 1998).

The facts in this case bear no semblance to those in prior cases in which we have recognized that an employer may be engaged in two separate enterprises, one agricultural and one commercial. For example, in *Bartunek v. Becker*, 222 Neb. 126, 129, 382 N.W.2d 300, 301 (1986), cited by the majority, we held that an employer who operated an automobile body shop on a farm which he and his father owned was engaged in "two businesses, one a farming operation which is exempt under [§ 48-106(2)] and the other an auto body shop which is not exempt." See, also, *Brown v. Leavitt Lane Farm*, 215 Neb. 522, 340 N.W.2d 4 (1983) (holding employer's general farming activities on his own land separate

and distinct business from his unrelated sale of nutrition products); *Campos v. Tomoi*, 175 Neb. 555, 122 N.W.2d 473 (1963) (indicating employers' general farming activities on own land separate and distinct business from employers' custom hay grinding services provided offsite). In all of our prior cases involving the operation of two businesses, there was a discernible separation of the two enterprises. Conversely, however, the record in this case demonstrates that D B Feedyards conducts a single, integrated operation in which its land is cultivated for the production of agricultural crops which are then used on D B Feedyards' premises to feed animals for livestock production, including animals owned by D B Feedyards and animals owned by others. Under these facts, it is impossible to draw a meaningful distinction between operations performed by D B Feedyards that are related exclusively to its own farming activities, and thus within the exemption, and those operations performed primarily for the benefit of a third-party consumer. To conclude that D B Feedyards is engaged in two separate businesses on these facts, one subject to the exemption and one not, "would tax our powers of distinction to the point of confusion." *Keefover v. Vasey*, 112 Neb. 424, 432, 199 N.W. 799, 802 (1924) (concluding question of whether grain thresher was farm laborer could not rest solely upon factual determination of whose grain was being threshed at time of injury). As briefed and argued by the parties, the precise issue presented is whether D B Feedyards was engaged in one business of farming or ranching, or in one commercial enterprise distinct from farming and ranching.

Addressing the issue as presented in this manner, I would conclude that D B Feedyards was engaged in one business of farming and ranching. This is not a case where intensive specialization has transformed an agricultural endeavor into a commercial venture. Our prior case law on this subject is factually distinguishable. In *Hawthorne v. Hawthorne*, 184 Neb. 372, 167 N.W.2d 564 (1969), we held that an employer engaged solely in custom combining for the public as a regular commercial business was not an employer of farm or ranch laborers within the meaning of § 48-106(2). Similarly, in *Campos v. Tomoi, supra*, we held that farmers who formed a partnership to perform custom hay grinding for cattle feeders did not fall within the statutory exemption when the

grinding services were unrelated to the farmers' day-to-day farming activities and were performed offsite. In both *Campos* and *Hawthorne*, the custom services were conducted away from the employers' premises and involved a single and independent aspect of crop and livestock production, i.e., harvesting grain in *Hawthorne* and grinding cattle feed in *Campos*. As noted, in the present case the record discloses a single integrated operation in which land was cultivated for the production of agricultural crops which were then used on D B Feedyards' premises to feed animals for livestock production, including animals owned by D B Feedyards and animals owned by others which D B Feedyards kept fed on its land. The same land, equipment, and labor are used regardless of who owns the cattle, and D B Feedyards' activities are not limited solely to the specialized feeding of animals owned by third parties. The essential nature and character of the enterprise operated by D B Feedyards is the same regardless of whether revenue is generated by the sale of its own fattened cattle or from the fees it receives for feeding cattle owned by others. Thus, D B Feedyards' entire operation constituted farming and ranching, albeit on a scale which was probably not envisioned by the Legislature when it enacted the farm laborer exemption in 1913 and added the ranch laborer exemption in 1945.

Based on the above, I would conclude that D B Feedyards was engaged in the business of farming and ranching and that it hired Larsen to perform tasks generally associated with that enterprise. Accordingly, it was an employer of farm or ranch laborers within the meaning of § 48-106(2) and not subject to the Nebraska Workers' Compensation Act.

Moreover, in my opinion, the fact-intensive nature of the present inquiry into the applicability of the farm or ranch laborer exemption benefits neither employers nor employees, and our prior case law on the subject has done little to clarify the parameters of the exemption. Although none of our prior case law has recognized it, since Initiative Measure No. 300 was adopted by the people of Nebraska in 1982, the Nebraska Constitution has defined "farming or ranching" in the context of what constitutes a family farm to mean "(i) the cultivation of land for the production of agricultural crops, fruit, or other horticultural products, or

(ii) the ownership, keeping or feeding of animals for the production of livestock or livestock products." Neb. Const. art. XII, § 8. This constitutional definition provides a plain and workable test to apply to the language of the exemption in § 48-106(2). Based upon such test, I would hold as a matter of law that D B Feedyards' entire operation constituted farming or ranching and that it was therefore an exempt employer of farm or ranch laborers within the meaning of § 48-106(2).

For these reasons, I respectfully dissent.

GERRARD, J., joins in this dissent.

GERRARD, J., dissenting.

Under the lamentable state of our farm and ranch workers' compensation law, it appears that employer liability turns not on whose ox was gored, but on whose steer was roped. That such an otherwise insignificant distinction should be meaningful indicates to me that Neb. Rev. Stat. § 48-106(2) (Reissue 1998) needs serious reconsideration at the Legislature's earliest convenience.

Justice Stephan's analysis is on point, and given the language of § 48-106(2) and our prior jurisprudence, the facts of this case lead to the conclusion that D B Feedyards was an exempt employer of farm or ranch laborers. Thus, I join his dissent. The problem, of course, is that the lack of workers' compensation coverage for such an obviously hazardous activity goes against every intuitive bone in a judge's body—which is why I write separately.

Section 48-106(2) provides, in relevant part, that "employers of farm or ranch laborers" are "declared not to be hazardous occupations and not within the provisions of the Nebraska Workers' Compensation Act." Such a declaration is ludicrous given the nature of farm and ranch work. Nearly 20 years ago, we observed that

> the statement contained in § 48-106(2) to the effect that farm or ranch labor is not a hazardous occupation is patently silly, and while we would agree that subjecting someone to the likelihood of being kicked in the knee by a horse or being pulled into a combine is as hazardous as any office work covered by the act, nevertheless, the Legislature, which has absolute control in this matter, has made such a classification, and absent a determination by

this court that the classification violates the Nebraska Constitution, we are compelled to apply the law as written. *Leppert v. Parker*, 218 Neb. 63, 68, 352 N.W.2d 180, 183 (1984). That straightforward observation has drawn no amendment to the statute.

Equally troubling, the Legislature has not defined "employers of farm or ranch laborers" or, alternatively, attempted to distinguish laborers on the basis of the work they do, rather than the nature of their employers. Nonetheless, despite the defects of § 48-106(2), courts must still decide the cases presented, and in the absence of definitive guidance from the Legislature, we have resorted to "an examination on a case-by-case basis of the facts in each particular instance." *Leppert*, 218 Neb. at 67, 352 N.W.2d at 182. While it is a truism that each case is decided on its own unique facts, our piecemeal consideration of these cases has degenerated, as the present case demonstrates. Workers' compensation liability cannot possibly depend on whose steer the claimant was roping, yet that is precisely the circumstance that confronts the court today.

"A fundamental element of Anglo-American jurisprudence is the principle that the law should be stable, fostering both equality and predictability of treatment." *Metro Renovation v. State*, 249 Neb. 337, 349, 543 N.W.2d 715, 724 (1996) (Connolly, J., concurring in result). Our workers' compensation law, with respect to farm and ranch laborers, fosters neither; workers engaged in identical labors can be treated differently based on the business structure chosen by their employers, and workers' treatment turns on distinctions that are too subtle to be understood or anticipated.

In short, the Legislature needs to speak on this matter and provide statutory definitions that are clear and meaningful. The Legislature is the appropriate forum for the collective resolution of questions of public policy. See *Parnell v. Good Samaritan Health Sys.*, 260 Neb. 877, 620 N.W.2d 354 (2000). Should the Legislature determine, out of articulated and legitimate policy concerns, that some, or all, farm and ranch laborers should be exempt from the Nebraska Workers' Compensation Act, then the Legislature should so provide in a manner that clearly delineates the scope of the act. Employers and laborers may then govern

their affairs accordingly. Should the Legislature continue to ignore the matter, this court will have little alternative but to continue its semantic distinctions between "farm or ranch" cattle and "commercial" cattle, and similar oddities. In that case, to the purchasers of farm and ranch liability or workers' compensation insurance coverage—caveat emptor.

STEPHAN, J., joins in this dissent.