ROBERT SWEENEY, APPELLANT, V. KERSTENS & LEE, INC., AND ROYAL & SUNALLIANCE INSURANCE COMPANY, APPELLEES.

672 N.W.2d 257

Filed December 16, 2003.   No. A-03-525.

Dirk V. Block, Jerylyn R. Bridgeford, and Steven J. Riekes, of Marks, Clare & Richards, L.L.C., for appellant.

Mark J. Peterson and Joseph M. Colaiano, of Koley Jessen, P.C., L.L.O., for appellees.

IRWIN, Chief Judge, and HANNON and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

Robert Sweeney appeals from an order of the review panel of the Workers' Compensation Court affirming an order entered by the trial court of the Workers' Compensation Court finding that Sweeney's medical bills related to his psychiatric treatment were not causally related to Sweeney's accidents and resulting injuries sustained while he was working for Kerstens & Lee, Inc. For the reasons set forth below, we reverse, and remand with directions.

## BACKGROUND

Initially, Sweeney was injured on November 14, 1997, while employed with Kerstens & Lee, when he was working in a trench and a large dirt clod struck him on the head. Doctors subsequently diagnosed Sweeney with neck strain and headaches. Sweeney went through physical therapy and was released to return to work on September 8, 1998. On September 10, Sweeney was working as an " 'up man,' " laying water and sewer pipe. While guiding a pipe into a trench, the pipe jerked, and Sweeney developed numbness and pain in his neck and arms. Subsequently, Dr. Stephen Doran, a neurosurgeon, recommended surgery, but Sweeney's scheduled surgery was later canceled by Sweeney's insurance company.

Trial was held on February 28, 2000, and the trial court issued its initial award on March 9. In that order, the trial court found that Sweeney suffered injuries as a result of accidents occurring on November 14, 1997, and September 10, 1998. The trial court

found that because of his November 14, 1997, injury, Sweeney suffered a period of 26⁴/₇ weeks of temporary total disability and was entitled to a 5-percent permanent loss of earning power. As to Sweeney's September 10, 1998, accident, the court found Sweeney to have been temporarily totally disabled beginning on September 14. The trial court also ordered Kerstens & Lee to pay for Sweeney's surgery.

By December 2000, both parties agreed to the court's appointment of Michael Newman as Sweeney's vocational rehabilitation counselor, whose services were to include an evaluation of Sweeney's earning power. In a letter dated March 28, 2001, to Sweeney's attorney, Newman stated that in his opinion, Sweeney was experiencing moderate to severe vocational adjustment. Specifically, Newman stated:

> In other words [Sweeney] is seriously struggling from an emotional loss standpoint and finds it difficult to make a concrete vocational decision at this point. There is further evidence of depression marked by sadness, anger, and loss of purpose. Said another way . . . Sweeney is grieving his loss of physical ability, subsequent job loss and the ability to earn his own way.

Newman noted that regardless of this fact, Sweeney was nothing less than 100 percent cooperative and was unquestionably committed to becoming reemployed.

In June 2001, the trial court adopted Newman's vocational rehabilitation plan for Sweeney, which plan included job placement. Under that plan, Sweeney spent the summer and early fall of 2001 pursuing reemployment. The record shows that even though Sweeney was aggressive in his job search, he did not receive any job offers due to his physical limitations, his lack of a high school diploma or a diploma through GED, and his illiteracy.

On January 20, 2002, Newman completed a loss-of-earning-power assessment for Sweeney, which showed that as a result of his injuries, Sweeney sustained a loss of earning power in the range of 55 to 60 percent.

On February 21, 2002, Kerstens & Lee filed an application to modify Sweeney's previous award. In that application, Kerstens & Lee asked the court to find that Sweeney had reached maximum

medical improvement and to determine the level of any lost earning capacity sustained by him as a result of his work-related injuries. Kerstens & Lee stated that in support of the application, it was offering Sweeney's medical records from Doran in addition to reports form Newman.

Due to Sweeney's lack of employment and his chronic pain, his emotional health suffered, with Sweeney experiencing severe depression. In the spring of 2002, Sweeney attempted suicide and Doran referred him to Dr. William Marcil, a psychiatrist. Marcil diagnosed Sweeney with major depression and an anxiety disorder. In a letter dated July 3, 2002, to Sweeney's attorney, Marcil stated:

> The etiology of . . . Sweeney's depression and arousal is due to the significant degree of stress and loss that has evolved since his injury to his neck approximately three years ago. He has been progressively concerned over his lack of returning to baseline physically and being unable to resume the work level that he previously enjoyed. His self-concept in general has been greatly transformed due to his lack of productivity and his perceived inadequacies compared to how he performed before the injury. The residual weakness and chronic pain are a continuous source of stress for . . . Sweeney. He has become demoralized, angry and threatened that he will not get the financial assistance that he feels is due to him given the residuals of his physical condition.

Kerstens & Lee also had Sweeney evaluated by another psychiatrist, Dr. Bruce Gutnik. In Gutnik's opinion, Sweeney's depression was caused by Newman's initial determination setting Sweeney's loss of earning capacity at 55 to 60 percent. Gutnik also opined that Sweeney had suffered from a major depressive disorder, but was in partial remission as of August 7, 2002. Gutnik testified that as of that date, Sweeney was no longer psychiatrically disabled, and that he would place no psychiatric restrictions on him.

In contrast, Marcil opined that Sweeney was not capable of gainful employment as a result of his psychiatric problems. Based on Marcil's opinion, Newman stated in a letter dated July 30, 2002, that based on both Sweeney's physical injuries and his

ongoing major depressive disorder, Sweeney's earning capacity would change as of that date to a loss of 100 percent.

Trial on Sweeney's application for modification was held on August 20, 2002. In the trial court's order modifying Sweeney's award, the court found that Sweeney was temporarily totally disabled from September 14, 1998, through February 20, 2002, a period of 179³⁄₇ weeks. Thereafter, Sweeney was entitled to compensation for a 55-percent loss of earning power. The court found that Kerstens & Lee should continue to pay for the medical care reasonably necessary to treat Sweeney's injuries suffered on September 10, 1998. The court also found that Sweeney's psychiatric problems and resulting care were not due to the losses suffered by Sweeney as a result of his accidents with Kerstens & Lee. Specifically, the court stated it was not persuaded that Sweeney's psychiatric care was necessitated by Sweeney's accident, but, rather, was triggered by Sweeney's disappointment in Newman's initial opinion concerning the extent of Sweeney's loss of earning capacity.

Sweeney appealed to the review panel which, on April 17, 2003, affirmed the trial court's order. Sweeney appeals.

## ASSIGNMENT OF ERROR

On appeal, Sweeney contends that the trial court erred in finding that both his depressive disorder and his medical bills for treatment of this disorder were not related to his accidents and resulting injuries sustained while he was working for Kerstens & Lee.

## STANDARD OF REVIEW

■ An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Misek v. CNG Financial*, 265 Neb. 837, 660 N.W.2d 495 (2003).

■ In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review

panel, a higher appellate court reviews the findings of fact of the single judge who conducted the original hearing; the findings of fact of the single judge will not be disturbed on appeal unless clearly wrong. *Schwan's Sales Enters. v. Hitz*, 263 Neb. 327, 640 N.W.2d 15 (2002). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Larsen v. D B Feedyards*, 264 Neb. 483, 648 N.W.2d 306 (2002).

## ANALYSIS

On appeal, Sweeney contends that the trial court erred in finding that both his depressive disorder and his medical bills for treatment of this disorder were not related to his accidents and resulting injuries. After reviewing the record, we find that the trial court was clearly wrong in regard to these determinations.

In its order modifying Sweeney's award, the court looked at the opinions of Marcil and Gutnik, both of whom are psychiatrists. Marcil diagnosed Sweeney with major depression and an anxiety disorder, caused by the significant degree of stress and loss that Sweeney had suffered since his work-related injuries. Specifically, Marcil stated:

> [Sweeney] has been progressively concerned over his lack of returning to baseline physically and being unable to resume the work level that he previously enjoyed. His self-concept in general has been greatly transformed due to his lack of productivity and his perceived inadequacies compared to how he performed before the injury. The residual weakness and chronic pain are a continuous source of stress for . . . Sweeney.

In contrast, Gutnik testified that Sweeney's depression was caused not by Sweeney's work-related accidents, but by Sweeney's disappointment following Newman's initial determination of Sweeney's loss of earning capacity at 55 to 60 percent.

In its order, the trial court relied on Gutnik's opinion and found that "it was indeed . . . Newman's opinion and not the losses suffered by [Sweeney] as a result of his accident and injury that caused [Sweeney] to suffer the depression and anxiety."

We determine that the trial court's finding is clearly wrong, given that even if we assume that Sweeney's depression resulted

from Newman's initial opinion, Sweeney's psychiatric injuries are nevertheless still compensable. The Nebraska Supreme Court has stated that when an injury arises out of a person's employment, every natural consequence that flows from the injury likewise arises out of the employment. See *Rosemann v. County of Sarpy*, 237 Neb. 252, 466 N.W.2d 59 (1991).

For example, in *Friedeman v. State*, 215 Neb. 413, 339 N.W.2d 67 (1983), the Supreme Court held that a conscious attempt at suicide is not necessarily an intervening event but may be considered as a consequence of an employee's work-related injury in cases where incontrovertible evidence shows that without the injury, there would have been no suicide.

In the instant case, the evidence shows that without Sweeney's injury, there would have been no loss of earning capacity and thus no depression resulting from that loss.

Sweeney states: "There is an unbroken causal chain between the work-related accident and the depression: [Sweeney's] work caused his injury. His injury caused his loss of ability to work. That caused the loss of earning power report. The report caused [Sweeney's] major depression." Reply brief for appellant at 2-3. Thus, as Sweeney argues, his depression is a consequence of the injury and "[b]ut for said injury, none of the preceding events would have occurred." *Id.* at 3.

Therefore, we find that because Sweeney's depression was caused by his accident, Sweeney's bills for psychiatric care are compensable, and that the trial court erred in this regard.

## CONCLUSION

After reviewing the record, we find that the trial court erred in adopting Gutnik's opinion and finding that Sweeney's depressive disorder and his medical bills for treatment of this disorder were not related to his accidents and resulting injuries sustained while he was working for Kerstens & Lee. For this reason, we reverse the judgment of the review panel and remand the cause to the trial court with directions to enter an order in accordance with our opinion.

REVERSED AND REMANDED WITH DIRECTIONS.